**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Virgil R. FULTZ, Defendant–Appellant.**

**No. 97–30337.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 21, 1998.

Decided June 24, 1998.

Mark S. Werner, Assistant Federal Defender, Billings, Montana, for the defendant-appellant.

William Mercer and C. Ed Laws, Assistant United States Attorneys, Billings, Montana, for the plaintiff-appellee.

Before: PREGERSON, TASHIMA, and THOMAS, Circuit Judges.

PREGERSON, Circuit Judge:

Virgil R. Fultz appeals his conviction for possessing an unregistered firearm in viola-

tion of 26 U.S.C. § 5861. He argues that the district court erred by denying his motion to suppress part of the stock and part of the barrel of a shotgun. Law enforcement officers found the parts in a closed cardboard box that contained Fultz's belongings. The cardboard box was kept in Tiffany Kassedyne's garage. Kassedyne allowed Fultz to stay at her house after Fultz was evicted from his apartment for nonpayment of rent. The officers seized the shotgun parts after Kassedyne allowed them to search the garage.

We must decide whether Fultz had a reasonable expectation of privacy in the closed cardboard box and, if so, whether Kassedyne had authority to authorize the officers to search Fultz's cardboard box. We believe that Fultz did have a reasonable expectation of privacy in the cardboard box and that Kassedyne had no authority to consent to its search, even assuming that she gave such consent. We therefore reverse and remand.

## BACKGROUND

In April 1996, Stillwater County law enforcement officers suspected that Fultz was involved in a store burglary. The officers learned that Fultz was residing with Kassedyne. The officers went to her house as part of their investigation.

· The officers arrived at the house and found Kassedyne at home but not Fultz. Kassedyne told the officers that Fultz stayed with her on and off and that she had not seen him for about twenty-four hours. The officers requested permission to search the house, and Kassedyne gave the officers written permission for a search.

Kassedyne told the officers that Fultz's belongings were piled up in the garage. She directed the officers to the specific area in the garage where Fultz stored his belongings. She told the officers that only Fultz's belongings were kept in that specific area and that none of her belongings were intermingled with his. Kassedyne never specifically consented to the search of Fultz's belongings.

Fultz stored his belongings in a closed suitcase, in closed, black plastic bags, and in closed cardboard boxes. Kassedyne allowed Fultz to store his belongings in her garage because Fultz had been evicted from his apartment about three months earlier. During that time, Kassedyne had never looked through Fultz's belongings, nor had Fultz given her permission to do so.

During the search of Fultz's belongings, the officers opened up a closed box where they found a sawed-off butt-end of a wooden gun stock and the sawed-off end of a gun barrel. The officers did not find any of the items stolen during the store burglary.

The officers arrested Fultz, obtained incriminating statements from him, and, with Fultz's help, found the sawed-off shotgun among Fultz's belongings in another closed cardboard box in Kassedyne's garage. The officers had failed to find the sawed-off shotgun in their initial search.

Fultz was indicted for possessing an unregistered firearm in violation of 26 U.S.C. § 5861. Fultz moved to suppress the evidence found as a result of the officers's search. After a hearing, the district court denied Fultz's motion. With the consent of the Government and pursuant to Rule 11 of the Federal Rules of Criminal Procedure, Fultz entered a conditional plea of guilty and was sentenced to eighteen months with three years of supervised release. He now appeals that adverse ruling.[1]

## DISCUSSION

■■■ We review de novo whether Fultz had a reasonable expectation of privacy in the cardboard boxes stored in the garage. *See United States v. Broadhurst,* 805 F.2d 849, 851 (9th Cir.1986) (reviewing de novo district court's ruling that defendants had standing to invoke Fourth Amendment). We also review de novo whether Kassedyne had authority to consent to a search of Fultz's property. *See United States v. Kim,* 105 F.3d 1579, 1581 (9th Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 353, 139 L.Ed.2d 274 (1997).

---

**1.** Fultz's conditional plea agreement allowed him to appeal the district court's denial of his motion to suppress.

## I.

■ A person has an expectation of privacy in his or her private, closed containers. *See United States v. Welch*, 4 F.3d 761, 764 (9th Cir.1993). A person does not forfeit that expectation of privacy merely because the container is located in a place that is not controlled exclusively by the container's owner. *See id.* Thus, in *Welch*, we held that a person retained her expectations of privacy in her purse even though the purse was in a trunk of a car over which she and someone else both had control. *See id.*

The Government argues that *Welch* does not govern this case because *Welch* involved a purse rather than a cardboard box and a person possesses "the highest expectations of privacy" in a purse. *See id.* ("[A] purse is a type of container in which a person possesses the highest expectations of privacy."). The Government argues that Fultz could not have had a reasonable expectation of privacy in the cardboard boxes that contained his personal belongings.

■ Although certain types of containers-suitcases, valises, purses, and footlockers, for instance-do command high expectations of privacy, this does not mean that other types of containers in which people store their personal belongings command no expectation of privacy. The Fourth Amendment protects people from unreasonable searches; whether a search is reasonable depends on *all* the circumstances, not just on whether a container happens to be a suitcase, valise, purse, footlocker, or cardboard box. *See United States v. Montoya de Hernandez*, 473 U.S. 531, 537, 105 S.Ct. 3304, 87 L.Ed.2d 381 (1985) ("What is reasonable depends upon all of the circumstances surrounding the search....").

■ In any event, as a practical matter, Fultz's boxes *were* his suitcases or valises or footlockers. After all, such containers are used to store personal belongings. Courts recognize that people have the highest expectations of privacy in these containers not because of what they look like or because of what they cost but presumably because of what they contain.

■ Because homeless people are less likely to own suitcases, valises, or footlock-

ers, they will often store their most private belongings in cardboard boxes and similar containers. The boxes of homeless people contain the same kinds of personal belongings as the valises, suitcases, and footlockers of those who have the money to buy the latter kind of more expensive containers.

Fultz, for all intents and purposes, was a homeless person. He was evicted from his home. He had one suitcase, which apparently was insufficient to store all of his personal belongings. He therefore had to keep his belongings in cardboard boxes and plastic bags. In these circumstances, Fultz had a reasonable expectation that the items stored in the boxes would remain private.

## II.

The Government contends that even if Fultz had a reasonable expectation of privacy in the cardboard boxes, the shotgun parts found by the officers were properly seized because Kassedyne validly consented to a search of the boxes. To meet its burden of showing that Kassedyne's consent was valid, the Government must show that Kassedyne had either actual or apparent authority to consent to the search. *See Welch*, 4 F.3d at 764.

■ A third party has actual authority to consent to a search of a container if the owner of the container has expressly authorized the third party to give consent or if the third party has mutual use of the container and joint access to or control over the container. *See id.* A third party has apparent authority to consent to a search of a container if the officers who conduct the search reasonably believe that the third party has actual authority to consent. *See id.*

There is no evidence in the record to suggest that Fultz authorized Kassedyne to consent to a search of his belongings. Thus, we must decide whether Kassedyne had actual authority under a mutual use and joint control theory or whether she had apparent authority because the officers reasonably believed that she had actual authority to consent to the search.

## A.

■ The Government contends that Kassedyne had actual authority to consent to the

search of Fultz's property because she had full access to the garage, thereby negating any expectation of privacy that Fultz might have had in his cardboard boxes. But what matters is not whether Kassedyne had access to the *garage*, but whether she had mutual use and joint access to or control over the *boxes*.

We illustrated this rule in *Welch*, where we held that a person can not give officers permission to search someone else's purse even if the purse is located in the trunk of a car that both persons use and control. *See id.* We stated that the government had to "show shared control with respect to the *purse* as well as with respect to the vehicle if it [was] to prevail on a mutual use and joint control theory." *Id.* (emphasis added). Because "there [was] simply nothing in the record demonstrating that McGee had use of, let alone joint access to or shared control over, Welch's purse," we ruled that McGee had no actual authority to allow the officers to search Welch's purse. *Id.*

Likewise, there is no evidence in the record in this case demonstrating that Kassedyne had use of and joint access to or shared control over Fultz's boxes. The arrangement between Fultz and Kassedyne is analogous to an example given by Justice O'Connor in *Karo:* Where a "guest in a private home has a private container to which the homeowner has no right of access[, t]he homeowner who permits entry into his home of such a container effectively surrenders a segment of the privacy of his home to the privacy of the owner of the container." *United States v. Karo,* 468 U.S. 705, 726, 104 S.Ct. 3296, 82 L.Ed.2d 530 (1984) (O'Connor, J., concurring). "[T]he homeowner ... lacks the power to give effective consent to the search of the closed container." *Id.*

Kassedyne allowed Fultz to bring his closed boxes into her garage and to store them in a specific part of the garage set aside for him. She did not use the boxes and she did not have, or even claim to have, a right of access to his boxes. As a matter of fact, Kassedyne told the officers that the boxes and plastic bags that were segregated in one area of the garage were Fultz's and not hers. Thus, Kassedyne lacked actual authority to consent to the search of Fultz's closed containers.

### B.

 The Government nevertheless argues that Kassedyne had apparent authority to consent to the search because the officers reasonably believed that she was authorized to consent to the search. The apparent authority doctrine, however, validates a search only where the search would be valid if the facts believed by the officer were true. *Welch,* 4 F.3d at 764.

The officers in this case were aware that Fultz's boxes were in a specific area segregated from Kassedyne's belongings because Kassedyne told them so. Kassedyne also clearly told the officers that Fultz's belongings were exclusively Fultz's and not hers. Thus, the officers were fully aware of the actual facts that establish Kassedyne's lack of authority to consent to the search of Fultz's closed containers.

 Apparently, the officers believed that because the boxes were inside the garage, Kassedyne's consent to search the garage applied to the boxes. If so, they were mistaken as to the law. But a mistaken belief as to the law, as distinguished from a mistaken belief as to facts, does not support the application of the apparent authority doctrine. *See id.* at 765. Therefore, the apparent authority doctrine does not make the warrantless search of Fultz's belongings constitutional.

### CONCLUSION

Fultz had a reasonable expectation that his closed cardboard boxes in Kassedyne's garage would remain private. Fultz did not share use of, access to, or control over these boxes with Kassedyne, and Kassedyne informed the officers who searched Fultz's closed boxes that the boxes were not hers but his. Accordingly, Kassedyne had neither actual nor apparent authority to consent to the search of Fultz's belongings. The search therefore violated the Fourth Amendment, and any evidence resulting from that search is inadmissible.[2] Fultz's conviction is there-

---

**2.** At oral argument before this court, Fultz's at-

torney explained that the motion sought to sup-

fore REVERSED and REMANDED for further proceedings consistent with this opinion.

THOMAS, Circuit Judge, dissenting.

I respectfully dissent. Although I agree with the majority's legal analysis, I do not reach the same conclusion when it is applied to the facts of this case.

Under *United States v. Matlock*, 415 U.S. 164, 170, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974), "the consent of one who possesses common authority over premises or effects is valid as against the absent, nonconsenting person with whom that authority is shared." "Common authority" means "joint access and control for most purposes." *Id.* at 171 n. 7, 94 S.Ct. 988. This concept is essentially a Fourth Amendment "assumption of risk" analysis. *United States v. Sledge*, 650 F.2d 1075, 1080 n. 10 (9th Cir.1981).

Cases subsequent to *Matlock* have emphasized that a consent-giver with limited access to the searched property lacks actual authority to consent to a search. *See, e.g., United States v. Warner*, 843 F.2d 401, 402 (9th Cir.1988); *United States v. Impink*, 728 F.2d 1228, 1233 (9th Cir.1984). Other cases have relied on the consent-giver's unlimited access to the property to bolster their finding of actual authority to consent to a search. *See, e.g., United States v. Guzman*, 852 F.2d 1117, 1122 (9th Cir.1988); *United States v. Sealey*, 830 F.2d 1028, 1031 (9th Cir.1987).

The record of the suppression hearing does not indicate any restriction on the property owner's access to the garage and defendant's personal articles. Sergeant Carraway testified the lessee informed him that "most of his stuff was piled up in a pile in the garage" and that when he went to the garage he observed "a large pile of clothes and garbage bags and boxes and personal belongings ...." The lessee testified that the defendant's property was "[p]retty much on the floor itself, those were his things." The lessee had complete access to the area, and had stored some of her possessions right above the defendant's. There was no evidence from any party that the defendant had made any attempt to establish privacy in his possessions, aside from closing the top on some of the cardboard boxes. No instructions were given the lessee by the defendant, nor were any restrictions requested. There were no markings on the boxes. The defendant's possessions were in plain sight when the garage door was opened, and the lessee's children's toys were located nearby.

Given that there was no evidence of a limitation on access, these circumstances are closer to *Sealey* than *Warner*. The defendant assumed the risk that the lessee would consent to a search when he placed his possessions in a pile in her garage, without attempting to restrict access in any manner. Thus, I believe the district court properly denied the suppression motion.

---

press only the sawed-off parts of the shotgun. But the Government conceded that if the sawed-off parts were illegally obtained, then the shotgun itself would have to be suppressed as the "fruit of the poisonous tree." *Wong Sun v. United States*, 371 U.S. 471, 487–88, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).