# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

            v.

JEFFREY BRIAN ZIEGLER,
            *Defendant-Appellant.*

No. 05-30177

D.C. No.
CR-03-00008-RFC
District of Montana,
Butte

ORDER

Filed June 21, 2007

Before: Diarmuid F. O'Scannlain, Barry G. Silverman, and
Ronald M. Gould, Circuit Judges.

Order;
Panel Concurrence;
Dissent by Judge W. Fletcher;
Dissent by Judge Kozinski

---

## ORDER

A *sua sponte* call for a vote on rehearing this case en banc
was made by an active judge of this court. The call failed to
receive a majority of the votes of the nonrecused active
judges. Fed. R. App. P. 35. The *sua sponte* en banc call is
therefore rejected.

---

O'SCANNLAIN, SILVERMAN AND GOULD, Circuit
Judges, concurring in the denial of rehearing en banc:

The court wisely denied rehearing this case en banc. We
write separately only to counter the dissent's unwarranted

7475

contention that the panel has "inaccurate[ly]" and "incomplete[ly]" described the record.

First, contrary to the dissent's assertions, the record in the district court shows that Frontline and its employees cooperated with the investigation at every turn. John Softich and Bill Schneider, the persons who performed the search, testified that they told their boss, Ron Reavis, the chief financial officer of the corporation, that the FBI had inquired about making a backup of the hard drive, and Reavis said "that as an officer of the company, he was okay with that, and he said that we could go forward and do that." Frontline later turned over the copies made by Softich and Schneider to the government. As FBI Agent Kennedy testified, "[a]t this point, Counselor, everybody at Frontline Processing is telling me they are going to cooperate, so I'm not going to go in and start serving search warrants on a company if they're going to cooperate. I have no desire to do that."[1]

The dissent concludes that this testimony shows only that Reavis "acquiesced in Softich and Schneider's planned action . . . ." The American Heritage Dictionary defines "consent" as "[a]cceptance or approval of what is planned or done by another; acquiescence." The American Heritage Dictionary of the English Language (4th ed. 2000). The testimony of Sofitch and Schneider does make clear that when Agent Kennedy asked these two employees to make a back-up copy of Ziegler's hard drive, they approached Reavis, told him what was being asked of them, and he said "that as an officer of the company, he was okay with that, and he said that we could go forward and do that."[2] A plan of action was proposed, Softich

---

[1]Agent Kennedy testified that in addition to later conversations with Frontline's corporate counsel, Michael Freeman, he also had "conversations with Mr. Reavis, who is the chief financial officer, telling me that Mr. Kittler and he both wanted to cooperate with the FBI."

[2]The dissent apparently would require "clairvoyant" consent. How else to understand its requirement that Reavis consent to the search "before Kennedy directed Softich and Schneider to perform it"? *Dissent* at 7489.

and Schneider conveyed the plan to Reavis, and they received approval of the plan; acquiescence by any other name is consent.[3]

The dissent also relies heavily on company president Chris Kittler's anti-government views, Softich's later "administrative termination," and Kittler's kicking and spitting fit at an airport "years later." But these subsequent incidents have little to no relevance to the question of whether the corporation consented at the time of the search. To a certain extent, reliance by the dissenters upon these events is very strange indeed, because what they prove is that Kittler was upset *because* his corporate employees and officers *cooperated* with and *consented* to the government's investigation.[4]

---

[3]It is hard to know what to make of the dissent's citation to *Bumper v. North Carolina*, 391 U.S. 543, 548-49 (1968), for the proposition that "acquiescence" does not equal "consent"? *Bumper* is simply and utterly inapt. In that case, four white law enforcement officers showed up at the house of Hattie Leath, a 66-year old African-American widow, and demanded entry to her house, telling her that they were in possession of a search warrant. *Id.* at 546. She allowed them entry to the house based upon their professed possession of a search warrant. The State later could not justify the search on the basis of any warrant, but the trial court refused to suppress the evidence discovered on the basis that Leath consented to the search. The Supreme Court reversed, holding that "[w]hen a law enforcement officer claims authority to search a home under a warrant, he announces in effect that the occupant has no right to resist the search. The situation is instinct with coercion-albeit colorably lawful coercion." *Id.* at 550. The Court's statement concerning "acquiescence to a claim of lawful authority," *id.* at 549, was quite clearly directed at the police gaining entry to search by lying about having a warrant. Even the dissent's most exaggerated anxieties about this case do not approach that scenario, and thus the quotation plucked from *Bumper* is at best misleading.

[4]*Compare Georgia v. Randolph*, 547 U.S. 103, 126 S.Ct. 1515, 1518 (2006) ("The Fourth Amendment recognizes a valid warrantless entry and search of premises when police obtain the voluntary consent of an occupant who shares, *or is reasonably believed to share*, authority over the area in common with a co-occupant who later objects to the use of evidence so obtained.") (emphasis added).

Finally, the quotation of the district court's statement that "they sure didn't consent to having him" is taken out of context by the dissent; what the court was discussing was whether Agent Kennedy had directed Softich and Schneider to make a backup tape. The dissent's own quotation from the transcript does not demonstrate that Kennedy "affirmatively stated" that neither Softich nor Schneider consented to the search. *Dissent* at 7488-89. Indeed, as described above, Kennedy's testimony was that everybody at Frontline was cooperating with the investigation.

The full exchange upon which the dissent hinges its analysis is as follows:

> THE COURT: Well, I think [Agent Kennedy's] testified a number of times contrary to your position. He said that he didn't ask them to do a search, and they sure didn't consent to having him. I don't understand that question, but his position is he didn't ask them to do a search. I know exactly what the positions are.

What this passage shows is that there was confusion over the extent to which Kennedy directed the search. But it is extravagant in the extreme to assert that this is a finding of fact or a legal conclusion that Frontline did not consent to making a backup of Ziegler's hard drive. And this passage does not undercut the testimony of Softich and Schneider that they went to Reavis and received instructions to go ahead with the plan.

The search was reasonable on the facts in the record of this case. Post hoc revisionism by the dissenters validates the wisdom of our court's decision not to rehear it en banc.

W. FLETCHER, Circuit Judge, dissenting, joined by PREGERSON, REINHARDT, KOZINSKI, HAWKINS, THOMAS, McKEOWN, WARDLAW, FISHER, PAEZ, and BERZON, Circuit Judges:

For two reasons, I dissent from the court's decision not to rehear this case en banc.

First, the employer in this case had an announced policy that employee computer use was subject to electronic monitoring from outside the employees' offices by the employer. The panel incorrectly concludes that this policy constituted express authorization by the employees for the employer to do something quite different — to consent to a warrantless physical entry into the employees' locked offices by criminal law enforcement agents to seize a computer.

Second, even assuming that the employer had the authority to consent to an FBI search of an employee's locked office for a computer, there was no such consent. Based on an inaccurate and incomplete description of the facts in the record, the panel incorrectly concludes that there was consent.

We should have taken this case en banc to correct the panel's erroneous view of the protection provided by the Fourth Amendment and to insure the integrity of our appellate process in dealing with a trial court record.

## I.   Factual Background

Defendant Jeffrey Ziegler worked in Bozeman, Montana as a manager at Frontline Processing. Frontline processed credit card billings. At the time of the events at issue, Frontline was a small company with between thirty and forty employees. The owner of the company, Chris Kittler, worked at the same location as his employees. According to the director of Frontline's information technology (IT) department, John Softich, Ziegler shared his position on the corporate ladder as second-

in-command with other employees, including CFO Ron Reavis. Reavis was not, as the panel opinion states, Ziegler's superior. Ziegler was disliked by other employees but was a personal friend of Kittler. Kittler created the position at Frontline for Ziegler and gave him a private office with a door that locked.

The search at issue resulted from an FBI investigation triggered by Ziegler's co-workers. Through remote electronic monitoring, IT technicians Softich and Bill Schneider discovered that company employees, including Ziegler, had been using their office computers to visit adult pornography sites. By remotely viewing internet activity on Ziegler's computer, Softich and Schneider also discovered that on two occasions Ziegler had visited sites that contained images of child pornography. Ziegler's computer had automatically stored those images as "cache" files, probably without Ziegler's knowledge.

Softich and Schneider did not inform Kittler, Frontline's owner, about the cache files. However, they did tell Reavis and the office receptionist, Lee Ann Miller. Schneider testified that when Reavis was told about Ziegler's activities, Reavis declared that he wanted to handle the situation internally "and not involve any authorities because he didn't want the company shattered." Schneider also testified that Miller, who disliked Ziegler, told her fiancé about the cache files. Miller's fiancé, who owned the company that provided Frontline's internet service, then contacted FBI agent James Kennedy.

Based on the tip from Miller's fiancé, Kennedy contacted Frontline employees. So far as the record shows, the only employees Kennedy contacted prior to the search of Ziegler's office were IT technicians Softich and Schneider. Kennedy did not contact either CFO Reavis or Frontline owner Kittler prior to the search.

The IT technicians did not have a key to Ziegler's office. Indeed, they had never entered Ziegler's office, even during the day, without his permission. A locksmith provided a key to Reavis, which he then gave to IT technicians Softich and Schneider.

Softich and Schneider testified that acting at Kennedy's direction and using the key obtained from the locksmith they entered Ziegler's locked private office after working hours, took Ziegler's hard drive, and made copies of that hard drive. According to Kennedy, however, Softich and Schneider acted on their own in entering Ziegler's office and obtaining copies of his hard drive. The district court believed Softich and Schneider rather than Kennedy. The court found that "Agent Kennedy contacted Softich and Schneider on January 30, 2001 and *directed* them to make a back-up of Defendant's computer files." (Emphasis added.) The court did not find that Kennedy had merely "inquired about" making a back-up.

Schneider testified that he and Softich told Reavis that they had been directed by Kennedy to go into Ziegler's office to take his hard drive, and that they were "going to do" that. Schneider testified that after they told Reavis what Kennedy had directed them to do, Reavis responded that "as an officer of the company, he was okay with that." Reavis did not testify. Six days after Softich and Schneider searched Ziegler's office and obtained the hard drive, and after discussions with its attorney, Michael Freeman, Frontline consented to turning over Ziegler's hard drive to the FBI.

The record contains no evidence that Kittler, Frontline's owner, had given any employee, including Reavis, authority to consent on behalf of the company to a search by the FBI. Indeed, the record contains substantial evidence that Kennedy, Softich, Schneider, and Reavis deliberately did not tell Kittler about the impending search of Ziegler's office. Kittler's intense dislike of the FBI was well known to Frontline employees. Kennedy testified in the district court that both

Softich and Schneider "felt their jobs would be in jeopardy if Mr. Kittler knew they were cooperating with the FBI." Kennedy also testified that Softich requested their meeting take place over the lunch hour "so as not to raise any questions at work." Softich and Schneider's unwillingness to inform Kittler is substantiated by events after the search. Schneider testified that, after the search, "Chris Kittler called us up to his office many, many, many, many, many times to scream at us for cooperating with the FBI." According to Schneider, Kittler "felt that the FBI coming in and doing the investigation in his company was unconstitutional and it was wrong." Kittler launched an internal investigation into "who had tipped off the FBI."

Schneider testified that he received a constructive discharge based on his cooperation with the FBI investigation. Miller also left the company because of Kittler. The intensity of Kittler's response did not diminish over time. Kittler used company money to help pay for Ziegler's legal defense when he was finally indicted, more than two years after the search. Softich also testified that, years later, during a chance encounter at an airport, Kittler kicked and spat on Reavis because he felt that Reavis had "betrayed the company."

Ziegler's hard drive contained several legal, adult, pornographic images. In addition, a few of the cache files, saved automatically on Ziegler's computer, contained child pornography. Ziegler never accessed the cache files after they were saved.

Ziegler pled guilty, and the district court sentenced him to a fine and two years probation. The court stated, in explanation of its light sentence: "The short duration of the possession, the fact that the searches were over a two-day period, and the fact that the defendant did not sort or save this material indicates that this defendant is not similar to the average offender charged with similar offenses. The defendant's evaluation indicates that the defendant is not a pedo[ph]ile."

Ziegler preserved for appeal the denial of his motion to suppress.

## II.    Motion to Suppress

Ziegler moved in the district court to suppress the cache files found on his hard drive. The government made two arguments in the district court in opposition to the motion. First, the government argued that Softich and Schneider searched Ziegler's locked office and took his hard drive on their own initiative, without any direction by the FBI. The government then relied on the undisputed fact that six days *after* Softich and Schneider had obtained the hard drive, Frontline, after consulting with counsel, consented to handing the hard drive over to Kennedy. Second, the government argued that, in any event, Ziegler had no reasonable expectation of privacy against a warrantless FBI-directed search of his locked private office. The government never argued that Reavis (or, indeed, anyone else at Frontline) consented to an FBI-directed search of Ziegler's office.

The district court denied Ziegler's motion. It rejected the government's first argument, holding that Softich and Schneider had not acted on their own, but rather had been directed to perform the search by FBI Agent Kennedy. This holding made irrelevant the undisputed fact that Frontline later cooperated with the FBI. However, the court agreed with the government's second argument, holding that Ziegler had no reasonable expectation of privacy against the search, irrespective of any post-search consent.

The panel has written two opinions in this case. In its first opinion, the panel affirmed the district court's denial of Ziegler's motion to suppress, agreeing with that court that Ziegler had no reasonable expectation of privacy against a warrantless FBI-directed search of his locked private office. *United States v. Ziegler*, 456 F.3d 1138 (9th Cir. 2006). In so concluding, the panel failed to acknowledge the controlling

Supreme Court case establishing a private employee's expectation of privacy in his office. *See Mancusi v. DeForte*, 392 U.S. 364 (1968). The panel also held that even though Softich and Schneider entered Ziegler's locked office to obtain the hard drive, they "did not actually search Ziegler's office." 456 F.3d at 1143 n.9. The panel's first opinion did not discuss consent.

This court called for a response to Ziegler's petition for rehearing en banc. In its response, the government argued that Ziegler did not have a reasonable expectation of privacy in his office or computer, but did not argue that CFO Reavis, or anyone else at Frontline, had consented to the warrantless FBI search of Ziegler's locked office. The panel then withdrew its first opinion and substituted a new one. *United States v. Ziegler*, 474 F.3d 1184 (9th Cir. 2007). In its second opinion, the panel holds that (a) based on its announced computer monitoring policy, Frontline had authority to consent to the FBI search performed by Softich and Schneider, and (b) Reavis, acting on behalf of Frontline, consented to the search by Softich and Schneider. Both holdings are wrong. We should have reheard this case en banc to correct them.

## III.   Frontline's Announced Computer Monitoring Policy

The panel incorrectly holds that Frontline, Ziegler's employer, had the authority to consent to a search of his locked private office and to a seizure of his hard drive located in that office. It is settled law that third-party authority to consent to a search must be premised on either of two bases: (1) express authorization by the first party, or (2) mutual use and joint access by the third party. *United States v. Davis*, 332 F.3d 1163, 1169 (9th Cir. 2003) (quoting *United States v. Fultz*, 146 F.3d 1102, 1105 (9th Cir. 1998)); *United States v. Matlock*, 415 U.S. 164, 171 n.7 (1974) (stating that third-party consent "is, of course, not to be implied from the mere property interest a third party has in the property . . . . but rests

rather on mutual use of the property by persons generally having joint access or control for most purposes").

The panel primarily relies on the first basis for consent — express authorization by Ziegler — to hold that Frontline had the authority to consent to the FBI search of Ziegler's locked office and seizure of his computer. The only analysis provided to substantiate Frontline's authority to consent is a description of Frontline's computer monitoring policy. *See Ziegler*, 474 F.3d at 1191-92. Frontline's computer monitoring policy gave its employees notice that the IT department had remote electronic access to employee computers. Upon being hired, employees were informed "through training and an employment manual" that the company had installed a firewall. *Id.* at 1192. Employees were also informed that the IT department routinely monitored computers and reviewed the firewall's log "[o]n a regular basis." *Id.* (alteration in original).

Based on this announced policy, the panel holds that Frontline, as Ziegler's employer, had authority to consent to a physical search of Ziegler's locked office by law enforcement agents. There is nothing in the opinion (or the record) to constitute express authorization beyond Frontline's policy that employees' computer use is subject to remote electronic monitoring by Frontline. The panel thus conflates the issue of whether an employee has notice that his employer will have remote monitoring access to his computer with the very different issue of whether the employee has expressly authorized his employer to give consent to law enforcement personnel to gain physical access to a computer in the employee's locked private office.

The second possible basis for consent — mutual use and joint access — is simply not applicable to the facts of the case. The Frontline employees involved in the search of Ziegler's office did not have mutual use and joint access to Ziegler's office. Reavis is the only person whom the panel identifies as supposedly having given consent to the search.

The record contains no evidence suggesting that Reavis had mutual use and joint access to Ziegler's office. Possession of a master key is not sufficient to establish mutual use and joint access, but Reavis, as Ziegler's co-worker, did not even have a key to Ziegler's office. Reavis had to obtain a key to Ziegler's office from a locksmith. *See United States v. Ruiz*, 428 F.3d 877, 880 (9th Cir. 2005) (declining to find actual authority to consent when the record was "sparse" as to whether the person who allegedly gave consent "had joint access to or control over" the area being searched).

IT technicians Softich and Schneider, who were charged with maintaining Ziegler's computer, also did not have mutual use and joint access to Ziegler's office. The record establishes that prior to the night of the search neither Softich nor Schneider had ever entered Ziegler's office, even during the day, without Ziegler's permission. Neither the panel's opinion nor the record contains a description of any Frontline policies or operational practices that show mutual use and joint access of any of the Frontline employees involved in the search of Ziegler's office. *Cf. Mancusi*, 392 U.S. at 368 (suggesting that consent by employee's supervisors could validate search when employee worked in "one large room, which he shared with several other union officials" and the employee did not claim that the records at issue were taken from a "part reserved for his exclusive personal use").

Plainly put, it is preposterous to conclude, as the panel opinion does, that an employer's policy of remote electronic monitoring of its employees' computer use either (1) constitutes express authorization by an employee for the company to give consent to law enforcement to conduct a physical search for a computer in the employee's locked private office or (2) establishes mutual use and joint access over such an office. We should have taken this case en banc to correct the panel's erroneous holding regarding an employer's ability to consent to a search of an employee's workspace, and to pro-

vide certainty in the law so that employers and employees can structure their behavior accordingly.

## IV.   Consent by Frontline

The panel holds incorrectly not only that Frontline could consent, but also that Frontline did consent. The panel states that "testimony makes clear that Ziegler's superiors at Frontline, in particular Reavis, an officer of the company, gave consent to a search of the property that the company owned and which was not of a personal nature." *Ziegler*, 474 F.3d at 1192. The panel states that its conclusion is warranted, even though company owner Kittler "objected (in some vague sense) to cooperation with the authorities." *Id.* at 1192 n.10.

There are two serious problems with the panel's conclusion. First, the testimony emphatically *does not* "make clear" that Reavis, or anyone else at Frontline, "gave consent" to the search of Ziegler's office. The panel can justify its conclusion only by providing an inaccurate and incomplete description of the testimony. Second, there is overwhelming evidence that Reavis did not have the authority to consent to the search on behalf of Frontline.

### A.   No Actual Consent by Reavis

The two people most competent to testify whether Reavis gave consent to Kennedy, the FBI agent who directed the search of Ziegler's office, were Reavis and Kennedy. Reavis had been subpoenaed by Ziegler and was in court and available to testify. But the government declined to put him on the stand.

Kennedy did testify. He affirmatively stated that neither Softich nor Schneider consented to the search. He did not mention even the possibility that Reavis had consented. To understand the relevant testimony (reproduced below), the following context is helpful. Kennedy testified in the district

court that Softich and Schneider had conducted the search of Ziegler's office on their own initiative. Kennedy testified that after Softich and Schneider conducted the search and obtained copies of Ziegler's hard drive as well as the hard drive itself, Kennedy discussed with Schneider the possibility of getting a warrant to force them to turn the copies and the hard drive over to him. Kennedy further testified that Freeman, Frontline's attorney, later consented to hand over the copies and the hard drive without the necessity for a warrant.

With that context in mind, here is Agent Kennedy's testimony:

> Q [by Ziegler's attorney]: [T]he only thing that Mr. Freeman agreed with you to do, and with the government, was that we would turn over to you the copies that had already been made, and the hard drive, and that's all they consented to; isn't that correct?
>
> A [by Agent Kennedy]: That's exactly right.
>
> Q: They didn't consent with you to have any searches done prior to the actual delivery of the computer to you, did they?
>
> A: I don't know what you're asking.
>
> Q: I mean, no one from Frontline consented to you directing Schneider or Softich to make a copy of a hard drive, did they?
>
> A: They did that on their own.
>
> A: No one consented, prior to you threatening Frontline with the issuance of a search warrant, that they were going to search Mr. Ziegler's computer to tell you what was on it, did they?

A: Counselor, I didn't threaten anybody.

At that point the district court interjected, saying:

> Well, I think he's testified a number of times con-
> trary to your position. He said that he didn't ask
> them to do a search, *and they sure didn't consent to
> having him*. I don't understand that question, but his
> position is he didn't ask them to do a search. I know
> exactly what the positions are.

(Emphasis added.) The district court's statement indicates that it understood Kennedy to have said that neither Softich nor Schneider consented to the search. The statement may also (and in my view does also) indicate that the court affirmatively found, as a matter of fact, that they did not consent. But whether Kennedy merely testified that there was no consent, or the district court also affirmatively found that there was no consent, does not matter. The important point is that Kennedy's testimony provides no support whatsoever for the panel's conclusion that Reavis consented to the search.

Schneider testified that after he told Reavis what he and Softich had been directed to do by Agent Kennedy, Reavis told Schneider that he was "okay" with them searching Ziegler's office and taking the hard drive. However, Schneider did not testify that Reavis said anything to Kennedy before the search. This omission is crucial, for the question is whether Reavis gave consent to Kennedy for the search. Schneider's testimony does not show that Reavis consented to the search before Kennedy directed Softich and Schneider to perform it. Schneider's testimony shows only that Reavis acquiesced in Softich and Schneider's planned action in response to Kennedy's direction to them. *See Bumper v. North Carolina*, 391 U.S. 543, 548-49 (1968) (government's burden to show consent "cannot be discharged by showing no more than acquiescence to a claim of lawful authority"); *United States v. Bautista*, 362 F.3d 584, 589, 591-92 (9th Cir.

2004) (stating " 'government's burden to show voluntariness cannot be discharged by showing no more than acquiescence to a claim of lawful authority' " and concluding that under the circumstances there had been no consent to enter room for search when Bautista opened door to motel room in response to police officers' direction to do so, stood there for a moment not responding, and then "invite[d] the officers into the room as she backed away from the door" (citation omitted)); *see also MacKenzie v. Robbins*, 248 F. Supp. 496, 501 (D. Me. 1965) (stating that "all of the cases" found by the court "have held that mere acquiescence in the entry to private living quarters by police officers acting under color of their office is insufficient to constitute the type of consent" required to validate a search) *cited with approval in Bumper*, 391 U.S. at 549 n. 13; *United States v. Marra*, 40 F.2d 271, 271 (W.D.N.Y. 1930) (holding that circumstances did not validate search based on consent when probation officers said they "were going to inspect the premises" and defendant replied, "All right") *cited with approval in Bumper*, 391 U.S. at 549 n. 13.

In sum, the government never argued — in the suppression hearing, in its brief on appeal to this court, or in its opposition to rehearing the first opinion en banc — that Reavis consented to the warrantless FBI-directed search of Ziegler's office. Nor did the government put on any evidence that Reavis had given such consent. The government declined to put Reavis on the stand. It put Kennedy on the stand, but Kennedy testified that Softich and Schneider had not given consent and did not even hint that Reavis had given consent. *See United States v. Shaibu*, 920 F.2d 1423, 1426 (9th Cir. 1990) (as amended) (consent is "not lightly to be inferred, and the government always bears the burden of proof to establish the existence of effective consent") (citations and internal quotation marks omitted); *see also Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990) (stating that the government also bears the burden of establishing common authority to consent).

## B.   No Authority to Give Consent

Not only did the government fail to argue or put on evidence that Reavis consented to the search. There is also overwhelming evidence that Reavis had no authority to provide consent on behalf of Frontline. Everyone involved in the search knew that the Frontline's owner, Kittler, never would consent — and never *did* consent — to an FBI search. Kittler worked at the same location with his employees and was readily available, but Kennedy, Softich, Schneider and Reavis deliberately chose not to involve him because they knew that he would object to any search.

Agent Kennedy was aware from the beginning that Kittler would not consent to a search. Softich requested that his first meeting with Kennedy take place over the lunch hour "so as not to raise any questions at work." Kennedy admitted that both Softich and Schneider "felt their jobs would be in jeopardy if Mr. Kittler knew they were cooperating with the FBI." Kennedy also admitted to telling Softich and Schneider not to discuss the matter within the company.

Kittler did not, as the panel states, merely "object[ ] (in some vague sense) to cooperation with the authorities." *Ziegler*, 474 F.3d at 1192 n.10. Rather, Kittler objected strenuously, and then acted vengefully against those who had cooperated with Kennedy. Kittler responded to the search by relieving Schneider of his job duties because of his unhappiness with Schneider's cooperation with the FBI. Miller, the receptionist, left the company because Kittler made her job so unpleasant after the episode. Years after the investigation, Kittler kicked and spat on Reavis because of Reavis's cooperation with the FBI.

## Conclusion

In its second opinion in this case, the panel affirms the district court based on an argument never made and never factu-

ally supported by the government. The panel both fails to apply the correct law and fails to describe accurately the facts in the record. I dissent from this court's decision not to rehear this case en banc.

---

KOZINSKI, Circuit Judge, dissenting from the order denying the petition for reahearing en banc:

The second opinion in this case, *United States* v. *Ziegler*, 474 F.3d 1184 (9th Cir. 2007), is troubling for its serious Fourth Amendment implications, as outlined by Judge W. Fletcher's persuasive dissent. But the opinion is also troubling because it transgresses the boundaries of our institutional competence and disregards settled rules of appellate review. First as to competence: We may not find facts on appeal; we may only review findings made by the courts below us. *See, e.g.*, *Anderson* v. *City of Bessemer City*, 470 U.S. 564, 574 (1985) ("The trial judge's major role is the determination of fact, and with experience in fulfilling that role comes expertise."); *United States* v. *Lang*, 149 F.3d 1044, 1046 (9th Cir. 1998) ("[T]he district court is in a superior position to judge the accuracy of witnesses' recollections and make credibility determinations in cases in which live testimony is presented." (internal quotation marks omitted)). This difference in institutional competence is also reflected in our Rules. *E.g.*, Fed. R. Civ. P. 52(a) ("[D]ue regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses.").

The panel affirms the district court's *result*, but does so by using facts the district court never found. The opinion "conclude[s]" that Reavis, a corporate officer, consented to the government search of Ziegler's office. 474 F.3d at 1192. But we, and the Supreme Court, have repeatedly and consistently held that consent to search must be found as a matter of *fact*. *See, e.g.*, *United States* v. *Mitchell*, 322 U.S. 65, 69 n.2 (1944); *United States* v. *Spires*, 3 F.3d 1234, 1236-37 (9th

Cir. 1993); *United States* v. *Shaibu*, 920 F.2d 1423, 1425 (9th Cir. 1990). The district court here made no findings as to consent, resolving the case on other grounds (which the panel now finds insufficient). *United States* v. *Ziegler*, No. CR-03-08-BU-RFC, at 3 (D. Mont. Sept. 8, 2004) ("Defendant could not have an objectively reasonable belief that the files he accessed on the Internet were private . . . .").

The panel finds consent based on a single passage of testimony from Schneider, an IT department employee, who claimed that he and his supervisor obtained Reavis's approval for going into defendants's office and copying his hard drive. The panel accepts this as the Gospel Truth, but it did not observe Schneider's testimony and is not in a position to determine whether he was lying or telling the truth. *See Anderson*, 470 U.S. at 575 ("[O]nly the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said."). The district court made no finding on this point.

Even if Schneider's testimony can be believed, it is insufficient to show that consent was given *to the government*. Schneider testified that Reavis told him that it was OK to proceed, but he does not say that this was ever communicated to Agent Kennedy. Again, the district court made no finding as to whether Agent Kennedy had been told of Reavis's apparent consent at the time that he ordered Schneider to copy Ziegler's hard drive. Most likely, Agent Kennedy was not aware of Reavis's statement as the conversation among Schneider, his supervisor and Reavis took place after Kennedy had already ordered them to copy the hard drive. *See* 474 F.3d at 1192 ("[W]hen I *returned from the meeting* with Agent Kennedy, I spoke to [my supervisor], and then we, in turn, both went up and spoke to Ronald Reavis. Explained the situation to him. Said that, you know, [the FBI] wanted a backup made of this information . . . . [H]e said that as an officer of the company, he was okay with that." (emphasis

added)). These are matters that the district court is competent to sort out; we are not.

Finally, even if we assume that Reavis did give consent, and that consent was communicated to Kennedy, there is yet another factual hurdle: Did Reavis have authority to consent to a search of Ziegler's office? The majority resolves this by finding that Reavis was Ziegler's "superior[ ]" at the company, and thus presumably had authority to enter Ziegler's office. 474 F.3d at 1192. But both of these are contested issues of fact that were not resolved by the district court.

As to being "superior" to Ziegler, Judge Fletcher correctly points out that the only testimony we have is that Ziegler and Reavis shared the role of "second-in-command." Fletcher dissent, at 7479-80. The district court made no finding that Reavis was defendant's superior, and I am aware of no evidence that could have supported it. Certainly, the record is not so unequivocal on this point that a district court's finding would be superfluous.

Even if Reavis *were* found to be Ziegler's superior, that does not necessarily mean that he had authority to enter Ziegler's office or to give consent to a government search. "[A]uthority to consent to a search requires a considered judgment of both factual circumstances and legal issues." *United States* v. *Kim*, 105 F.3d 1579, 1582 (9th Cir. 1997). Here, the district court made no findings as to whether Reavis, assuming that he was Ziegler's superior, had the authority to enter the office himself or consent to entry by anyone else. Had Agent Kennedy known of Reavis's consent, he might been justified in relying on it when ordering the search of Ziegler's office, but that depends on a close analysis of the facts and circumstances of the case; it is not purely a matter of law that can be determined for the first time on appeal.

We have held that "[t]he existence of consent to a search is not lightly to be inferred, and is a question of fact to be

determined from the totality of circumstances." *United States* v. *Patacchia*, 602 F.2d 218, 219 (9th Cir. 1979) (Sneed, J.). We don't have the institutional competence to find facts: We don't observe the witnesses and we don't have the district court's first-hand familiarity with the record. Where, as here, the factual question is fraught with uncertainty, and that uncertainty has not been resolved by the district court, we cannot find the facts ourselves. At most, we can remand for a determination of the dispute by the district court.

This brings me to the panel's second institutional transgression: resolving the case on a basis not briefed or argued on appeal. I have examined the appellate briefs closely and find no discussion of consent. Rather, the parties discussed the question of Ziegler's expectation of privacy in his office. The panel originally ruled for the government on this point, but then realized its error and corrected it in its second opinion. 474 F.3d at 1188-90. The government's brief did not argue consent as an independent basis for upholding the search, doubtless for good reason: There are no district court findings that would have supported affirmance on that ground. We have long held that issues not briefed or argued on appeal are waived. *See Stuard* v. *Stewart*, 401 F.3d 1064, 1067 (9th Cir. 2005) ("[W]e are not going to construct an argument for the state sua sponte, depriving Stuard's counsel of a fair chance to respond to it."); *Smith* v. *Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999) ("[O]n appeal, arguments not raised by a party in its opening brief are deemed waived."). We apply that rule with some vigor against criminal defendants, *see, e.g.*, *United States* v. *Romm*, 455 F.3d 990, 997 (9th Cir. 2006) (rejecting un-raised argument challenging constitutionality of search in child pornography case); we should be no less vigorous in applying it against the government.

By plucking consent out of its judicial top hat, when neither party has argued it and the district court made no findings to support it, the panel gives the unfortunate impression that it is seeking to vindicate a result it has reached on other (now

repudiated) grounds. It is not our business to reach particular results, nor may we jiggle the rules of procedure to achieve an outcome we prefer. Our responsibility is to apply the law in an objective and impartial manner, and let the chips fall where they may. Here, the government lost the one issue on which it chose to make its stand—Ziegler's expectation of privacy in his own office. At that point it was our responsibility to reverse the district court and vacate the defendant's sentence. Appellate review is not a magic wand and we undermine public confidence in the judicial process when we make it look like it is.

PRINTED FOR
ADMINISTRATIVE OFFICE—U.S. COURTS
BY THOMSON/WEST—SAN FRANCISCO

The summary, which does not constitute a part of the opinion of the court, is copyrighted
© 2007 Thomson/West.