**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

APR 22 2011

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

OMAR ARREGUIN,

Defendant - Appellant.

No. 09-50552

D.C. No. 5:08-cr-00161-VAP-1

MEMORANDUM[*]

Appeal from the United States District Court
for the Central District of California
Virginia A. Phillips, District Judge, Presiding

Argued and Submitted February 11, 2011
Pasadena, California

Before: GOODWIN, D.W. NELSON, and N.R. SMITH, Circuit Judges.

Omar Arreguin entered a conditional guilty plea to a two-count indictment

charging him with possession of methamphetamine with intent to distribute in

violation of 21 U.S.C. § 841. Pursuant to the terms of his plea agreement, Arreguin

now challenges the district court's denial of his motion to suppress evidence obtained

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

in a warrantless search of his residence by agents of the Drug Enforcement Administration, as well as statements he made to the agents following his arrest. Arreguin contests: (1) the district court's factual findings; (2) the district court's finding that Arreguin's written consent to a search of the residence was voluntary; and (3) the district court's conclusion that an overnight guest, Elias Valencia, possessed authority to consent to the agents' entry and search.

For the reasons that follow, we affirm the district court's order in part, reverse in part and remand for further proceedings. Because the parties are familiar with the facts of the case, we do not recite them here except as necessary to explain our decision.

## 1. The District Court's Factual Findings

At the suppression hearing, defense witnesses testified to a version of events regarding the agents' search of the residence that differed sharply from the testimony of the Government's sole witness, Special Agent John Rubio. In denying Arreguin's motion, the district court specifically found "the Government's witness['s] version of the events surrounding the task force's entry into the residence more credible than those of the defense witnesses." In particular, the district court found credible Agent Rubio's "testimony that Valencia opened the door in the presence of the other adult

occupants [Arreguin and his wife], without any objection on their parts," and consented to the agents' entry and search of the house.

While failing to contest these findings in his opening brief, Arreguin's counsel stated at oral argument that this issue was implicit in his reliance on the testimony of defense witnesses in his opening brief.[1] Despite the presentation of contradictory testimony, Arreguin has failed to identify any evidence suggesting that the district court's credibility determination was clearly erroneous. *See United States v. Craighead*, 539 F.3d 1073, 1082 (9th Cir. 2008) ("Where testimony is taken, we give special deference to the district court's credibility determinations.") (citing *United States v. Nelson*, 137 F.3d 1094, 1110 (9th Cir. 1998)). Further, this credibility issue has been waived because Arreguin failed to challenge the district court's factual findings in his opening brief. *See United States v. Waters*, 622 F.3d 1075, 1089 n.6 (9th Cir. 2010) (failure to raise issue in opening brief results in waiver); *United States v. Ullah*, 976 F.2d 509, 514 (9th Cir. 1992) (same). Accordingly, we affirm the district court's findings of fact. We review the additional issues presented solely according to the version of events testified to by Agent Rubio.

2. **Arreguin's Written Consent**

---

[1]Arreguin's counsel also failed to file a reply brief.

The district court denied Arreguin's motion to suppress in part because of his written consent to a search of the residence, which was obtained after his arrest. In this ruling, the district court rejected Arreguin's claim that his consent was coerced. As conceded by the Government at oral argument, however, Arreguin's consent cannot be used to support the validity of the warrantless search because Arreguin signed the consent form only after the search was conducted.[2] *See United States v. Lewis*, 231 F.3d 238, 241 (6th Cir. 2000) ("[T]he government cannot rely on the consent form signed by [Defendant] to justify the search after the fact."); *United States v. George*, 883 F.2d 1407, 1417 (9th Cir. 1989) (affirming denial of motion to suppress based on district court's factual finding that consent was obtained before search began, rather than after, as third party testified). Accordingly, the district court erred in suggesting that Arreguin's written consent was a basis upon which to deny his motion. We therefore decline to address whether his consent was coerced.

### 3. Valencia's Authority to Consent to the Search

The district court denied Arreguin's motion mainly on the finding that Valencia had authority to consent to the search. The Government has the burden of establishing the effectiveness of a third party's consent to a search of a defendant's property.

---

[2]While Arreguin turned over additional narcotics in his possession following his arrest, this evidence was not obtained as a result of the agents' search of the residence.

4

*United States v. Welch*, 4 F.3d 761, 764 (9th Cir. 1993) (citing *Illinois v. Rodriguez*, 497 U.S. 177 (1990)); *see also United States v. Reid*, 226 F.3d 1020, 1025 (9th Cir. 2000) ("'The existence of consent to a search is not lightly to be inferred and the government always bears the burden of proof to establish the existence of effective consent.'") (quoting *United States v. Shaibu*, 920 F.2d 1423, 1426 (9th Cir. 1990)). Based on the evidence deemed credible, the district court found that Valenica—a guest at the house—had verbally consented to the agents' search of the residence. Because Valencia had given this consent in the immediate presence of Arreguin and his wife—the actual tenants—the district court found that Agent Rubio "reasonably concluded Valencia had ostensible authority to permit entrance and search."

The Government has not argued here that Valencia possessed actual or any express authority to consent to a search, nor is there evidence that Valencia possessed such authority. *See United States v. Matlock*, 415 U.S. 164, 171 n.7 (1974) (noting that the actual authority of a party to consent to a search rests "on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched"); *United States v. Fultz*, 146 F.3d 1102, 1105 (9th Cir. 1998) (holding that a third party has authority to consent to

5

a search of property if the owner "has expressly authorized the third party to give consent or if the third party has mutual use" of the property). While discussed at oral argument, the Government has also not argued that the search was warranted on the basis of a safety sweep. In fact, there are no facts in the record to support a protective sweep of the house because no one had been arrested at the time of the initial search and there was no reason to believe the house "harbor[ed] an individual posing a danger to those on the arrest scene." *Maryland v. Buie*, 494 U.S. 325, 334 (1990); *see also id.* at 327 ("A 'protective sweep' is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others.").

The Government argues that Valencia possessed apparent authority to consent the search of the residence. The specific evidence at issue, however, was found as a result of searches of a shoe box located in the master bathroom and a Gucci bag located inside a car parked in the garage. The Government has the burden of establishing that Valencia had apparent authority to consent to the specific areas searched, not just authority to consent to a generalized search of the residence. *See United States v. Dearing*, 9 F.3d 1428, 1430 (9th Cir. 1993) (holding that it was reasonable for officers to believe that a caretaker who lived in a house had authority over common areas but that it was unreasonable to assume the caretaker had actual authority to consent to a search of the defendant's bedroom); *United States v. Davis*,

6

332 F.3d 1163, 1170 (9th Cir. 2003) (holding that a third party who shared an apartment with the defendant did not have actual or apparent authority to consent to a search of the defendant's belongings); *United States v. Fultz*, 146 F.3d 1102, 1106 (9th Cir. 1998) (finding no apparent authority where officers were aware that appellant's boxes were in a specific area and homeowner informed them that the boxes were appellant's); *Welch*, 4 F.3d at 765 (holding that a third party who consented to a search of his car did not have apparent authority to grant officers consent to search his girlfriend's purse, which was located in the trunk). The district court did not rule on whether Valencia had apparent authority to consent to a search of the master bathroom, the shoe box, the garage, the car, or the Gucci bag found within the car.

While conceding at oral argument that Agent Rubio's testimony is unclear whether the money found in the Gucci bag was itself in plain view, the Government argued that any dispute over the scope of the search was waived because it was not raised before the district court. The trial court record, however, does not support the Government on this argument. Arreguin specifically disputed the validity of the search of the Gucci bag in his motion before the district court, as well as Valencia's authority to consent to a search of the "entire premises." While obscured by defense

counsel's otherwise meritless arguments about the circumstances of the search, these claims were again raised in this appeal.

Defense counsel managed to obscure the relevant legal issues in this case through his borderline "assistance." Indeed, the district court initially denied the suppression motion without a hearing because counsel failed to follow relevant local rules. The district court allowed defense witnesses to testify only after counsel threatened that his own failure to proffer testimony in a timely fashion would otherwise amount to ineffective assistance of counsel. While the Government suggests the violation of local rules is an alternative basis upon which to affirm, the district court ultimately did not rely on this issue in denying the motion. Under the circumstances, however, it is understandable how the primary issues in this matter—the viability and scope of Valencia's apparent authority—became lost, as defense counsel failed to even mention them at oral argument before the district court or here.

Because the scope of Valencia's apparent authority was not addressed by the district court, we remand this case for a determination whether any evidence justified Rubio's alleged belief that Valencia had apparent authority to consent to a search of the shoe box and Gucci bag.

**AFFIRMED in part, REVERSED in part and REMANDED.**

8