**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.

ABEL IKE RUIZ,
            *Defendant-Appellant.*

No. 04-30516

D.C. No.
CR-03-00210-AJB

OPINION

Appeal from the United States District Court
for the District of Oregon
Anna J. Brown, District Judge, Presiding

Argued and Submitted
September 16, 2005—Portland, Oregon

Filed November 7, 2005

Before: Raymond C. Fisher, Ronald M. Gould, and
Carlos T. Bea, Circuit Judges.

Opinion by Judge Gould

**COUNSEL**

Matthew McHenry, Portland, Oregon, for defendant-appellant
Abel Ike Ruiz.

Stephen F. Peifer, Assistant United States Attorney, Portland, Oregon, for plaintiff-appellee United States of America.

---

## OPINION

GOULD, Circuit Judge:

Abel Ike Ruiz pled guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Pursuant to his conditional plea agreement, Ruiz challenges the district court's denial, after hearing, of his motion to suppress evidence found in a trailer home. He argues that the district court erred in determining that a resident of the home, Charles Boswell, had the authority to consent to the warrantless search of a gun case found in the home, that the search of the gun case cannot be justified under the exigent circumstances or single-purpose container exceptions, and that all evidence obtained as a result of the allegedly illegal search is inadmissible. We hold that Boswell had apparent authority to consent to the search of the gun case, and we affirm.

## I

On February 20, 2003, three Portland police officers accompanied Multnomah County parole officer David Upton to a trailer home in Portland, Oregon. They were looking for Bruce Lagrew, a parolee under Upton's supervision, because Upton had received anonymous tips that Lagrew possessed firearms in violation of state and federal law and the conditions of his parole.

Upton knocked on the door of the trailer and Boswell answered. Upton identified himself, explained that Lagrew had listed the trailer as his residence, and asked Boswell for consent to enter the trailer and look for Lagrew. Boswell is Lagrew's uncle,[1] and he told Upton that he had been living in

---

[1]Boswell testified that Lagrew's mother was his sister.

the trailer along with Lagrew's mother for about a year. It is unclear whether the other officers overheard this exchange, but Officer Graham testified at the suppression hearing that at the time of the search it was his understanding that Boswell lived at the trailer. Although Boswell told Upton that Lagrew was not in the trailer home and that Lagrew no longer lived there, Boswell consented to Upton and the officers entering the trailer to verify that Lagrew was not present.

Upon entering the trailer, Upton and the officers saw a man, later identified as Ruiz, sleeping on a pull-out bed in the living room. Upton and Boswell went to the back of the trailer, while Officers Chamberlin, Graham, and Martin stayed near the entrance. Officers Chamberlin and Martin talked with Ruiz, who gave them his name and acknowledged that he was a felon who was recently off parole. Officer Chamberlin left the trailer to run background checks on Ruiz and Boswell. While Officer Chamberlin was outside, Officer Graham noticed a triangular, cloth case in plain view on a shelf in the living room above the foot of Ruiz's bed. The case was at Officer Graham's eye level, and he testified at the suppression hearing that he immediately recognized it as a gun case.

At about this time, Boswell and Upton returned to the living room, where Ruiz was still present. Officer Graham asked Boswell whether there was a gun in the case, and Boswell responded that he did not know. Officer Graham then asked Boswell if he could look in the case, and Boswell said "sure." Officer Graham testified that the case "felt heavy, like there was a gun inside." He found a .22 caliber semiautomatic handgun inside the case. He took the case outside to make sure the gun was unloaded.

Officer Chamberlin saw Officer Graham exiting the trailer with the .22 caliber handgun after he himself had confirmed that Ruiz was a felon. Once inside, Officer Chamberlin noticed a leather jacket hanging near Ruiz. Officer Chamber-

lin was concerned for officer safety because Ruiz was a felon and a gun had been found close to the bed where Ruiz was lying. Officer Chamberlin asked Ruiz whether the jacket was his and requested consent to search it. Ruiz replied "Yeah, it's my jacket. Go ahead."

Officer Chamberlin searched the jacket, found a speed loader containing ammunition for a .38 caliber revolver, and then arrested Ruiz with the help of Officer Martin. Officer Martin searched the bed on which Ruiz was lying and found a .38 caliber handgun under the pillow. Officer Chamberlin advised Ruiz of his rights, and Ruiz admitted that he owned the .38 caliber handgun and the speed loader.

Ruiz was charged with knowingly and unlawfully possessing the .22 caliber handgun and/or the .38 caliber handgun in violation of 18 U.S.C. § 922(g)(1). He filed a motion to suppress the evidence against him, asserting that the searches violated his Fourth Amendment rights. The district court denied the motion and Ruiz pled guilty to possessing both firearms, but reserved a right to appeal the district court's denial of his suppression motion. The district court sentenced Ruiz to five years of probation. This timely appeal followed.

## II

A district court's denial of a motion to suppress is reviewed de novo, while its factual findings are reviewed for clear error. *United States v. Bynum*, 362 F.3d 574, 578 (9th Cir. 2004). We may affirm a district court's denial of a motion to suppress on any basis supported in the record. *United States v. Albers*, 136 F.3d 670, 672 (9th Cir. 1998). Whether a person has actual or apparent authority to consent to a search is a mixed question of law and fact reviewed de novo. *United States v. Kim*, 105 F.3d 1579, 1581-82 (9th Cir. 1997).

## III

[1] A third party's consent to the search of another's belongings is valid if the consenting party has either actual or

apparent authority to give consent. *United States v. Davis*, 332 F.3d 1163, 1169 (9th Cir. 2003). "A third party has actual authority to consent to a search of a container if the owner of the container has expressly authorized the third party to give consent or if the third party has mutual use of the container and joint access or control over the container." *Id.* (quoting *United States v. Fultz*, 146 F.3d 1102, 1105 (9th Cir. 1998)). There is no evidence in the record to show that Ruiz expressly authorized Boswell to consent to the search, and the record is similarly sparse as to whether Boswell had joint access to or control over the container. Assuming that Boswell did not have actual authority to consent to the search, we address whether he had apparent authority to do so.

**[2]** We have established a three-part test to determine whether a third party has apparent authority to consent to a search:

> First, did the searching officer believe some untrue fact that was then used to assess the extent of the consent-giver's use of and access to or control over the area searched? Second, was it under the circumstances objectively reasonable to believe that the fact was true? Finally, assuming the truth of the reasonably believed but untrue fact, would the consent-giver have had actual authority?

*United States v. Dearing*, 9 F.3d 1428, 1429-30 (9th Cir. 1993) (citations omitted). Apparent authority is measured by an objective standard of reasonableness, and requires an examination of the actual consent as well as the surrounding circumstances. *See id.* at 1430 ("Even when the invitation [to search] is accompanied by an explicit assertion that the person lives there, the surrounding circumstances could conceivably be such that a reasonable person would doubt its truth and not act upon it without further inquiry.") (quoting *Illinois v. Rodriguez*, 497 U.S. 177, 188 (1990)) (alteration in original). The apparent authority doctrine applies only to reasonable

mistakes of fact, not to mistakes of law. *United States v. Welch*, 4 F.3d 761, 764-65 (9th Cir. 1993).

Our task under *Dearing* is to assess three questions: First, did Officer Graham believe an untrue fact that Boswell had authority over the container? Second, if so, was Officer Graham's belief that Boswell had access to or control over the container objectively reasonable under the circumstances? Third, if it is assumed to be true that Boswell had access to or control over the container, would that have given him actual authority to consent to its search?

**[3]** It is evident from the record that Officer Graham assumed that Boswell had at least joint control over the gun case on the shelf of the trailer's living room. When Officer Graham decided to search the gun case, he knew: (1) Boswell lived in the trailer, (2) Ruiz was sleeping in the trailer when the officers arrived, (3) the gun case was on a shelf in the living room, (4) Boswell said he did not know if a gun was in the case, and (5) Boswell consented to a search of the case. When Officer Graham inquired whether there was a gun in the case, Boswell took it upon himself to respond to the question. Officer Graham's question to Boswell asking for consent to search implies that he believed Boswell had access to or control over the case. We therefore conclude that Officer Graham believed that Boswell had control of or authority over the case, satisfying the first part of the *Dearing* test.

**[4]** Assuming that Officer Graham's belief that Boswell had control of or authority over the gun case was incorrect, we next address the crucial issue whether Officer Graham's belief was objectively reasonable under the circumstances. There were several factors that would lead a reasonable officer to conclude that Boswell had access to or control over the gun case. Boswell was a long-term resident of the trailer and the case was in plain view on a living room shelf. When asked about the contents of the case, Boswell did not disclaim ownership of or access to the case, but instead disclaimed knowl-

edge regarding whether a gun was then in it. When Officer Graham asked if he could search the case, Boswell again did not disclaim ownership or control over it, and rather gave explicit and unqualified consent to the search. While none of these factors standing alone is dispositive, together they support the conclusion that Graham's belief that Boswell had authority over the container was reasonable.

Ruiz argues that Boswell's response that he did not know if a gun was in the case compels the contrary conclusion. Ruiz contends that Officer Graham should have further questioned Boswell's authority to consent. But Boswell's statement could have had various meanings, and specifically could have meant that Boswell had control over the case but did not know if a gun was in it at the time. Or it might have meant that Boswell was seeking to deter Officer Graham from a search that necessarily would have followed an affirmative answer. We will not second guess Officer Graham's judgment that Boswell had control over the case, because that assessment was "objectively reasonable" within the meaning of *Dearing*.

**[5]** Finally, if Boswell had access to or control over the container, he would have had actual authority to consent to its search. There was no suggestion that the consent was coerced, and Ruiz does not challenge the district court's determination that Boswell consented to the search. If Boswell had authority over the case, whether joint or sole, then he had authority to consent to its search. We conclude that, based on the statement and surrounding circumstances, Boswell had apparent authority to consent to the search under the standards that we derive from *Dearing*.

Our conclusion that Boswell had apparent authority to authorize search of the case comports with the most fundamental justifications for the apparent authority doctrine. As explained in a leading treatise: "[I]f it is accepted that the making of searches by consent should not occupy second-class status in the hierarchy of law enforcement practices,

then certainly the search should not be undone by reasonable good-faith mistakes of *fact* concerning the authority of the consenting party." Wayne R. LaFave, *Search and Seizure* § 8.3(g) at 173 (4th ed. 2004) (emphasis in original). *See United States v. Jenkins*, 92 F.3d 430, 438 (6th Cir. 1996) (holding that a driver of a tractor trailer had apparent authority to consent to a search of a trailer, even though he stated "It's not up to me; I don't own the stuff" before signing a consent form, when the surrounding circumstances suggested that he had such authority).

**[6]** We do not depart from the well-established rule that authority to consent to a search of property does not necessarily translate into authority to search specific containers. *See Welch*, 4 F.3d at 764 ("The shared control of 'host' property does not serve to forfeit the expectation of privacy in containers within that property."). However, in the cases in which we have held that there was not actual or apparent authority for a third party to consent to a search we have found that there was some fact that made it unreasonable for the officer to believe that the third party had authority over the container. *See, e.g., id.* at 764-65 (holding that it was unreasonable to believe that woman's boyfriend had authority to consent to the search of her purse, even though he had authority to consent to the search of the car in which it was kept). Here, Boswell's statement that he did not know if a gun was in the case was not enough to put a reasonable officer on notice that Boswell lacked authority to consent to the search under the total circumstances, including that Boswell was a long-term tenant of the trailer, that the gun case was visible on a shelf in the living room, and that Boswell answered questions about the case without disclaiming control over it.

**[7]** We hold that Officer Graham's factual beliefs were objectively reasonable, and that Boswell had apparent author-

ity to consent to the search of Ruiz's gun case. The district court did not err in denying the motion to suppress.[2]

**AFFIRMED**.

---

[2]Because we affirm on the ground that apparent authority supported the consent of Boswell to search, we need not reach the issues whether exigent circumstances justified the challenged search, or whether the single purpose container exception permitted the search.