**UNITED STATES of America,
Plaintiff,**

v.

**TOAN PHUONG NGHE, Defendant.**

**Case No. CR12–0331–JCC.**

United States District Court,
W.D. Washington,
at Seattle.

Feb. 5, 2013.

---

Stephen Paul Hobbs, U.S. Attorney's Office, Seattle, WA, for Plaintiff.

Michael Filipovic, Alan Zarky, Federal Public Defender's Office, Seattle, WA, for Defendant.

## ORDER ON DEFENDANT'S MOTIONS TO SUPPRESS

JOHN C. COUGHENOUR, District Judge.

This matter comes before the Court on Defendant Toan Phuong Nghe's motion to suppress fruits of unlawful entry and search (Dkt. No. 20) and motion to suppress statements (Dkt. No. 22). Having thoroughly considered the parties' briefing and the relevant record, the Court finds an evidentiary hearing unnecessary and hereby GRANTS the motion to suppress fruits of unlawful entry and search (Dkt. No. 20) and DENIES as moot the motion to suppress statements (Dkt. No. 22) for the reasons explained herein.

## I.  FACTUAL BACKGROUND

The following summary comes from the parties' briefing and attached exhibits. On September 5, 2012, Tukwila Police officers responded to an anonymous report of narcotics activity in room 107 of the Boulevard Inn Motel. Upon arrival, Officer Gary Leavitt spoke with the motel's on-duty manager, Alan Short. Short advised Officer Leavitt that Nghe was staying in room 107, and that because Nghe was a frequent motel guest, the motel allowed him to rent the room without filling out the motel's standard guest registration form. Short also told Officer Leavitt that the only other guest authorized to be in room 107 was one Stevie Blumenstock.

Officer Leavitt checked Nghe's name and learned that he had felony convictions. He, along with Officers Eric Hines and Randy Rusness, then went to room 107. Outside room 107, they encountered Stevie Blumenstock. Blumenstock said that Nghe was not in the room, but that other people were, that she did not know their names, and that Nghe was not inside. The officers knocked several times and heard motion within the room, but no one answered.

The officers returned to the motel office and informed Short that unknown people were in room 107. Short gave the officers a key and asked the officers to "trespass" anyone in room 107 besides Nghe. The officers returned to room 107 and entered it using the key. They encountered three people, whom they detained. Officer Hines checked the bathroom. From that vantage point, he saw a handgun wedged between the mattress and box spring of the bed. The people the officers had detained denied knowledge of the gun.

Officer Leavitt then saw Nghe approaching the room. In response to questioning, Nghe stated that the gun was his. The officers knew Nghe had a felony criminal history that precluded him from possessing a firearm. Officer Rusness arrested Nghe, placed him in the patrol car, and advised him of his *Miranda* rights. Nghe then told Officer Rusness that the firearm was not his but that he had borrowed it from a friend. Officer Rusness transported Nghe to Tukwila Police Department, where Sergeant Doug Johnson interviewed Nghe. During the interview, Nghe said he

had found the gun in a bush about a week prior and had brought the gun to the Boulevard Inn.

The Government charged Nghe with being a felon in possession of a firearm as an armed career criminal, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1). (Dkt. No. 3.) Nghe now moves to suppress all fruits of the officers' entry into Nghe's room, including the gun and all of Nghe's statements to the police. (Dkt. No. 20.)

## II. DISCUSSION

### A. The Search

"A warrantless entry into a home violates the Fourth Amendment unless an exception to the Fourth Amendment warrant requirement applies, such as emergency, exigency, or consent." *Espinosa v. City & County of San Francisco*, 598 F.3d 528, 533 (9th Cir.2010). "For Fourth Amendment purposes, a hotel room is treated essentially the same, if not exactly the same, as a home." *United States v. Nerber*, 222 F.3d 597, 600 n. 2 (9th Cir. 2000); *see Stoner v. California*, 376 U.S. 483, 490, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964); *United States v. Cormier*, 220 F.3d 1103, 1108–09 (9th Cir.2000). The burden is on the Government to justify a warrantless entry based on any of the exceptions to the warrant requirement. *United States v. Hawkins*, 249 F.3d 867, 872 (9th Cir.2001).

When a person whose property is to be searched voluntarily consents, the police may conduct the search without a warrant. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). In addition, "[a] third party's consent to the search of another's belongings is valid if the consenting party has either actual or apparent authority to give consent." *United States v. Ruiz*, 428 F.3d 877, 880 (9th Cir.2005). Under the apparent authority doctrine, a warrantless search of another's property is valid only if

"the facts available to the officer at the moment [would] warrant a man of reasonable caution in the belief that the consenting party had authority over the premises." *Illinois v. Rodriguez*, 497 U.S. 177, 188, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990) (quoting *Terry v. Ohio*, 392 U.S. 1, 21–22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)) (quotation marks and indications of alteration omitted); *Georgia v. Randolph*, 547 U.S. 103, 106, 109, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006).

For example, in *Stoner v. California*, a hotel clerk, upon a request from the police for "permission" to enter the defendant's hotel room, opened the door to the room and let the police search it. 376 U.S. at 485, 84 S.Ct. 889. The Supreme Court held that the hotel clerk did not have apparent authority to consent to the search: "[T]he police could not rely upon the obtained consent because they knew it came from a hotel clerk, knew that the room was rented and exclusively occupied by the defendant, and could not reasonably have believed that the former had general access to or control over the latter." *Rodriguez*, 497 U.S. at 188, 110 S.Ct. 2793 (citing *Stoner*, 376 U.S. at 489, 84 S.Ct. 889). As the Supreme Court later explained:

> A person on the scene who identifies himself, say, as a . . . hotel manager calls up no customary understanding of authority to admit guests without the consent of the current occupant. . . . [A] hotel guest customarily has no reason to expect the manager to allow anyone but his own employees into his room . . . . In these circumstances, neither state-law property rights, nor common contractual arrangements, nor any other source points to a common understanding of authority to admit third parties general-

ly without the consent of a person occupying the premises.

*Randolph,* 547 U.S. at 112, 126 S.Ct. 1515.

The Ninth Circuit has established a "three-part test" to assess whether a third party has apparent authority to consent to a search:

> First, did the searching officer believe some untrue fact that was then used to assess the extent of the consent-giver's use of and access to or control over the area searched? Second, was it under the circumstances objectively reasonable to believe that the fact was true? Finally, assuming the truth of the reasonably believed but untrue fact, would the consent-giver have had actual authority?

*Ruiz,* 428 F.3d at 880–81 (quoting *United States v. Dearing,* 9 F.3d 1428, 1429–30 (9th Cir.1993)). "The apparent authority doctrine applies only to reasonable mistakes of fact, not to mistakes of law." *Id.* at 881. Finally, "[t]he constant element in assessing Fourth Amendment reasonableness in the consent cases ... is the great significance given to widely shared social expectations ...." *Randolph,* 547 U.S. at 111, 126 S.Ct. 1515.

■ The Government argues that "the entry into Mr. Nghe's room at the Boule-

vard Inn did not violate the Fourth Amendment because the officers were acting on the apparent authority of the Motel Manager who requested that they trespass unregistered guests from Room 107." (Dkt. No. 25 at 9.) The extent of the Government's argument is as follows: (1) "[t]he officers ... confirmed that the motel had a policy of requiring all individuals entry [sic] into a room to register with the front desk"; (2) "there were in fact unregistered guests in Room 107"; (3) "the motel manager specifically requested the officers to trespass the unregistered guests and gave them a key to the room to do so"; (4) "it is reasonable for the motel to limit or control who has access to their rooms and to trespass those who are not registered guests"; (5) therefore, "[t]he officers' reliance on the motel manager's request to trespass unregistered guests ... was objectively reasonable." (Dkt. No. 25 at 9–10.)

■ The Government fails to conduct the three-step *Ruiz* analysis. It does not identify the "untrue fact" the officers believed and used to assess the extent of the motel manager's access to or control over Nghe's room. Indeed, it does not argue that the officers believed the motel manager had joint control over Nghe's room.[1]

---

1. The Government mentions in a footnote that "[s]tate trespass law allows the possessor of private property to eject persons present thereon without permission." (Dkt. No. 25 at 9 n. 4.) That is true, but it does resolve the more complex issue here—whether a motel owner's right to eject trespassers from its property outweighs its registered guest's reasonable expectation of privacy in his motel room. Because the Government does not develop this issue beyond citing to the common-law rule, the Court does not consider it as a ground for upholding the search. In any event, "[t]he authority which justifies ... third-party consent does not rest upon the law of property, with its attendant historical and legal refinements, but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any

of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." *Randolph,* 547 U.S. at 110, 126 S.Ct. 1515 (quoting *United States v. Matlock,* 415 U.S. 164, 171 n. 7, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974)); *see Chapman v. U.S.,* 365 U.S. 610, 617, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961); *Sledge,* 650 F.2d at 1082 ("The ultimate requirement is reasonableness under the [F]ourth [A]mendment, not strict compliance with technical state law concepts ....").

And of course, in the absence of exigent circumstances, the officers' belief that the unregistered guests were committing misdemeanor criminal trespass on the motel's property does not excuse the officers' failure to secure a warrant before entering the room to arrest them. *See Welsh v. Wisconsin,* 466

Instead, the Government appears to argue that the motel's registered guest policy and guest registration form somehow put guests on notice that the motel had authority to consent to officers' entering its guests' rooms to eject unregistered visitors, and that the officers' knowledge of the registered guest policy rendered it reasonable for them to conclude (albeit mistakenly) that Nghe had granted the motel such authority:

> Indeed, the motel likely has actual authority to trespass unregistered guests—the only potential question being whether Mr. Nghe was aware of this fact given that he did not fill out a specific registration form to rent the room. The government assumes for the sake of argument that the lack of such technical notice to Mr. Nghe might deprive the motel of the right to trespass unregistered guests. Nevertheless, the apparent authority of the motel to do so remains.

(Dkt. No. 25 at 10 n. 5.) But the Government has not submitted a copy of the motel's registration form with its briefing, and so it fails to show that the form put the motel's guests on notice of anything. And even if the form did inform guests that their signatures signaled their authorization to consent to entry into their rooms to eject unregistered visitors, Nghe did not sign the motel's form, *and the officers knew that.* It would not have been "apparent" to a reasonable officer, who knew that Nghe had *not* seen such a hypothetical form, that Nghe had authorized the motel to consent to entry into his room to eject unregistered guests. *See, e.g., United States v. Welch,* 4 F.3d 761, 765 (9th Cir.1993) ("There is nothing about these facts that would have led a reasonable

officer to believe that Welch had expressly given McGee authority to consent to the search of the purse."); *cf. United States v. Young,* 573 F.3d 711, 717–718 (9th Cir. 2009) ("[A] hotel's confidential policy ..., not disclosed to the defendant, cannot destroy an otherwise reasonable expectation of privacy.") (citing *Rakas v. Illinois,* 439 U.S. 128, 143–44 & n. 12, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978)). Here, as in *Stoner,* "there is nothing in the record to indicate that the police had any basis whatsoever to believe that the [manager] had been authorized by the [defendant] to permit the police to [enter] the [defendant's] room." 376 U.S. at 489, 84 S.Ct. 889.

Nor does the fact that the motel manager gave the officers the key to Nghe's room and asked them to eject the unregistered guests render such a belief reasonable. "An officer cannot always assume that an invitation to enter a room or dwelling is necessarily authorized by the rightful occupant." *United States v. Sledge,* 650 F.2d 1075, 1077 (9th Cir.1981). Indeed, a survey of the case law reveals a remarkable proclivity on the part of motel clerks to hand over room keys to police officers and ask them to "handle the situation." Reasonable police officers know better than to interpret such requests as evidence that the motel has "authority over" their guests' rooms—unregistered guest policy or not. *See United States v. Garcia,* 690 F.3d 860, 862 (7th Cir.2012) ("If anyone with a key can permit police to search a person's home, office, hotel room, or other place of occupancy, personal privacy would be considerably diminished. Courts understandably refuse to grant the police such carte blanche."). As in *Stoner,* here, the officers' assumption that the "hotel clerk had authority to admit them to

U.S. 740, 749–53, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984); *United States v. Struckman,* 603 F.3d 731, 746 (9th Cir.2010) ("[T]here is simply no legal support for holding that an ongo-

ing criminal trespass, on its own, constitutes an exigency that overrides the warrant requirement.") (quoting *United States v. Washington,* 573 F.3d 279, 287 (6th Cir.2009)).

the defendant's room ... was an implausibly naive view of the law, and not a factually supportable inference of the occupant's probable intent." *Sledge*, 650 F.2d at 1077 (citing *Stoner*, 376 U.S. 483, 84 S.Ct. 889). The motel manager did not have apparent authority to consent to the officers' entry into Nghe's room to eject unregistered visitors. The Government has failed to show that an exception to the warrant requirement justified the warrantless search.

■ "An evidentiary hearing on a motion to suppress need be held only when the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist." *United States v. McTiernan*, 695 F.3d 882, 891 (9th Cir. 2012) (quotation marks omitted). There are no contested issues of fact here. An evidentiary hearing is not required.

### B. The Fruits of the Search

Nghe argues that the gun and all of Nghe's statements must be suppressed as fruits of the unconstitutional search. The Government makes no argument that, if the search was unconstitutional, some or all of these items are nevertheless admissible under an attenuation, independent source, or inevitable discovery theory. *See United States v. Davis*, 332 F.3d 1163, 1171 (9th Cir.2003). The Court agrees with Nghe that the gun and all subsequent statements Nghe made to the police are fruits of the unlawful search and orders them suppressed.

Because the Court suppresses Nghe's statements as fruits of the unlawful search, the Court denies as moot Nghe's motion to suppress those statements on the alternative bases that they were involuntary and that the officers failed to advise Nghe of his *Miranda* rights. (Dkt. No. 22.)

### III. CONCLUSION

For the foregoing reasons, Nghe's motion to suppress fruits of unlawful entry and search (Dkt. No. 20) is GRANTED, and his motion to suppress statements (Dkt. No. 22) is DENIED as moot.