Filed 11/22/13  P. v. Moore CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

| California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115. |
| --- |

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>DANIEL LEON MOORE,<br><br>        Defendant and Appellant. | A136152<br><br>(Del Norte County<br> Super. Ct. No. CRF 11-9468-4) |

Daniel Leon Moore was charged by information with the felony offenses of cultivating marijuana (Health & Saf. Code, § 11358) and possessing marijuana for sale (Health & Saf. Code, § 11359).  He moved to set aside the information under Penal Code section 995 based on the denial of his motion to suppress evidence made at the preliminary hearing.  After the denial of the motion to dismiss and amendment of the information to add the felony offense of maintaining a place for cultivating marijuana (Health & Saf. Code, § 11366), Moore pleaded no contest to that charge and the other charges were dismissed.  The court suspended imposition of sentence and placed Moore on three years' supervised probation.  Moore appeals, pursuant to Penal Code section 1538.5, subdivision (m), arguing that the evidence found in his residence should have been suppressed as the result of an unreasonable search in violation of the Fourth Amendment.  We conclude the search was lawful, and accordingly, we affirm the judgment.

1

## FACTS

"The facts are taken from the transcript of the preliminary hearing" held on April 5, 2012. (*People v. Hawkins* (2012) 211 Cal.App.4th 194, 197, fn. 2 (*Hawkins*).) And, we recite only those facts necessary to resolve the issues raised on this appeal.

Del Norte County Sheriff's Deputy Richard Griffin testified on direct examination that on July 18, 2011, he had received a call from dispatch that Moore's neighbor had reported she thought there was an illegal marijuana grow operation on Moore's property. Griffin actually spoke to the neighbor on the telephone. The neighbor said she had gone to the residence to contact the occupants and had seen what she thought were marijuana plants inside a large garage, and also just marijuana laying around. That same day, Griffin and Detective Ed Fleshman went to Moore's property. Each officer was dressed in plain clothes and had a visible gun in a holster. Griffin wore a vest and his law enforcement badge was pinned to the center of his chest. Fleshman also had on a visible badge.

The officers parked their vehicle on the road adjacent to the back of the Moore's property. There was neither a sidewalk nor a road shoulder. The residence was located at the end of a driveway. According to Griffin, there was no fence around the property, just "a gate in the driveway," and a " 'No Trespassing' " sign on the gate. The gate was not open, but there was an area to the left of the gate where there was a common worn path; the officers "crawl[ed]" over the gate. "[K]eeping in mind the 'no trespassing issue,' " the officers went directly to the front door of the residence.

After knocking on the residence's front door, the officers were met by Shane Auer. Griffin identified himself as a deputy sheriff, said he was there to investigate a possible illegal marijuana grow, and asked if there was a marijuana grow at the residence. Auer replied there was a marijuana grow inside the residence, the marijuana belonged to him and Moore and it was only for them, that Moore was on vacation, and that he (Auer) was in charge of taking care of the residence and marijuana while Moore was not there. Griffin asked if Auer had a medical marijuana recommendation. Auer said he did, but he would have to go to his residence in Crescent City to retrieve it. Griffin then asked

2

"basically point blank," "If this is a legal grow I'll be in there for about five minutes, then I'll be out. I just want to make sure it's in compliance and I'll be out of here." Auer replied, "Yeah, I don't think I need a lawyer for that. Come on in."[1]

During the inspection of the premises, Auer indicated the marijuana grow was spread over several rooms on the bottom floor. Griffin described the layout as a trimming room, two rooms where large marijuana plants were growing (90 two-foot tall plants in one room and 117 about three-foot tall plants in another room), and a cloning room containing 297 marijuana clones, "like starter plants." The inspection took less than twenty minutes.

Although Moore was not present on the day of the search, the court permitted him to testify as to conditions of the property both before and after his vacation, "for illustrative purposes." Moore's property was surrounded in part by a six-foot tall fence

---

[1] We reject Moore's contentions that the officers used an element of deception to gain Auer's consent by implying he could be legally possessing and cultivating medical marijuana. Auer's responses to the officers' questions suggested the possibility that the marijuana was being possessed and cultivated pursuant to the Compassionate Use Act of 1996 (CUA; Health & Saf. Code, § 11362.5 et seq.) and/or the Medical Marijuana Program (MMP; Health & Saf. Code, § 11362.7 et seq.). Concededly, "[t]he CUA does not grant immunity from *arrest* for [the crimes of possession and cultivation]. So long as the authorities have probable cause to believe that possession or cultivation has occurred, law enforcement officers may arrest a person for either crime regardless of the arrestee's having a physician's recommendation or approval." (*People v. Kelly* (2010) 47 Cal.4th 1008, 1013 (*Kelly*).) Nevertheless, a police officer is not required to make an arrest where he reasonably believes a person, who is possessing or cultivating marijuana, is a "patient" acting on the written or oral "recommendation or approval of a physician," and the person is possessing and cultivating the marijuana "for the personal medical purposes of the patient." (§ 11362.5(d)); see *People v. Mower* (2002) 28 Cal.4th 457, 468 ["[p]robable cause [to arrest] depends on all of the surrounding facts [citation], including those that reveal a person's status as a qualified patient . . . under [Health & Safety Code] section 11362.5[, subd.] (d)"]; *Kelly, supra*, at p. 1013 [the CUA does not "specify an amount of marijuana that a patient may possess or cultivate; it states instead that the marijuana possessed or cultivated must be for the patient's '*personal medical purposes*' "].) Thus, the record does not support appellant's contention that it was "manifestly clear" that regardless of the size of the marijuana grow the officers were going to arrest Auer because he did not have on his person a written physician's recommendation for medical marijuana.

3

made of cedar. A gate was secured to metal posts driven in a horizontal position into the earth across the driveway. The gate had several locks: one lock was used by PG & E, one lock was used by Moore, and two other locks were not used because Moore had either forgotten the combination or misplaced the key. There was a " 'No Trespassing' " sign on the post connected to the gate. If visitors wanted to come to the residence, they had to call Moore because the gate had to be opened. The residence could not be seen from the gate. Moore conceded there was a way to enter the property to get to the front door of the residence without opening the gate (by climbing up an embankment), but he claimed there was no path.

In rebuttal, Officer Griffin looked at the photographs of Moore's property that were admitted in evidence as defense exhibits. The officer then described how he "simply" walked around the gate onto a "common pathway . . . that was definitely worn in." The officer did not really focus on the locked gate, because when he saw the " 'No Trespassing' " sign, he decided he was going to use the common walkway to go to the front door. On an almost daily basis the officer opened gates to walk to the front of a residence to perform his duties. After looking at photographs, the officer recalled that on the day of the search as he approached the residence the garage door was open and Auer came out of the garage and met the officer.

The magistrate denied Moore's motion to suppress the evidence found in his residence. In his written order, the magistrate initially found Moore and Auer had "exhibited a subjective expectation of privacy" in the property "that [was] objectively reasonable," and therefore, the officers' "entry onto a portion of the property behind the gate violated [Moore's] Fourth Amendment rights." However, the magistrate found the seizure of evidence found in the residence was not the fruit of the illegal entry as Auer's consent to search was voluntary and not obtained by exploitation of the officers' illegal entry: "The officers each had holstered side-arms and displayed badges. There is no evidence of direct or implied coercion beyond their authoritative presence. It was daytime. Mr. Auer considered the option of seeking legal advice ('I guess I don't need an

4

attorney for that'). [The court] did not hear from Mr. Auer and so [has] no evidence of his impression or state of mind."

## DISCUSSION

" 'On appeal from a [Penal Code] section 995 review of the denial of a defendant's motion to suppress, we review the determination of the magistrate at the preliminary hearing. [Citations.] We must draw all presumptions in favor of the magistrate's factual determinations, and we must uphold the magistrate's express or implied findings if they are supported by substantial evidence.' " (*Hawkins, supra,* 211 Cal.App.4th at p. 200.) "We then exercise our independent review to determine 'whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment[.]' " (*People v. Duncan* (2008) 160 Cal.App.4th 1014, 1017.)

Initially we note it is not necessary to address Moore's arguments concerning the legality of the officers' entry onto his property. As we now discuss, even if the officers' entry was illegal, the record demonstrates that Auer had actual authority to consent to an inspection of the marijuana grow and there was substantial evidence to support the magistrate's findings that Auer's consent was voluntary and not obtained by the officers' exploitation of the illegal entry.

We find no merit to Moore's argument that Auer's responses to the officers' questions demonstrated he did not have the authority to consent to an inspection of the marijuana grow. It is well settled that a warrantless search of a defendant's property may be sustained based on the consent of a third person. (*United States v. Matlock* (1974) 415 U.S. 164, 170, 171.) "The authority which justifies the third-party consent does not rest upon the law of property, with its attendant historical and legal refinements . . . but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." (*Id.* at

5

p. 171, fn. 7; see *United States v. Fultz* (9th Cir. 1998) 146 F.3d 1102, 1105 [third person has actual authority to consent to search of container if third person has mutual use of container and joint access to or control over container].) Contrary to Moore's contention, although Auer did not live at Moore's residence, the evidence demonstrated he was more than just a friend who agreed to watch the residence while Moore was on vacation. The officers could reasonably believe Auer had actual authority to consent to an inspection based on Auer's mutual ownership and use of the marijuana grow for medical purposes and his access to and control over the marijuana grow. (See *Illinois v. Rodriquez* (1990) 497 U.S. 177, 188; *People v. Ledesma* (2006) 39 Cal.4th 641, 703 (*Ledesma*).) [2]

We also find no merit to Moore's argument that Auer's consent was not voluntary. "[W]hether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." (*Schneckloth v. Bustamonte* (1973) 412 U.S. 218, 227 (*Schneckloth*).) It is only by an analysis of "all the circumstances of an individual consent" and a "careful sifting of the unique facts and circumstances" of the case "that it can be ascertained whether in fact [consent] was voluntary or coerced." (*Id.* at p. 233.) Contrary to Moore's contention, there is substantial evidence supporting the magistrate's finding that Auer's consent was voluntary. Specifically, the magistrate could find there

---

[2]  *Georgia v. Randolph* (2006) 547 U.S. 103, cited by Moore, "does not affect our conclusion. That case held that the police cannot reasonably rely on one co-occupant's consent to search a residence when the other co-occupant expressly refuses consent. It does not change the legal standards applicable to the present case, in which [Moore] was not present when the police received consent to enter his residence and did not refuse such consent." (*Ledesma, supra,* 39 Cal.4th at p. 704, fn. 16.) We also reject Moore's related contentions that the officers could not rely on Auer's consent and should have further questioned him before acting on his consent. At the time the officers asked to inspect the marijuana grow, Auer "did not disclaim ownership or control over it, and rather [he] gave explicit and unqualified consent." (*United States v. Ruiz* (9th Cir. 2005) 428 F.3d 877, 881.) Because Auer had actual authority to consent to an inspection of the marijuana grow, we do not need to address Moore's contention that the officers could not rely on Auer's apparent authority to consent.

6

was nothing "inherently coercive . . . [¶] . . . either from the nature of the police questioning or the environment in which it took place." (*Id*. at p. 247.) When the officers encountered Auer, the officers did not draw their weapons or physically touch him. They told Auer why they were present and there was no evidence Auer was surprised, confused or frightened, or asked the officers to leave. After Auer said there was a marijuana grow in the residence and he had a medical marijuana recommendation, Officer Griffin asked if the officers could inspect the marijuana grow for compliance with the law.[3] Auer's response - that he did not think he needed an attorney for that - supports an inference he believed the officers would not find incriminating evidence in the residence. There was also no evidence the officers indicated in any way that they had the right to search the residence without permission or they intended to search the residence regardless of Auer's response. On this record, we see no reason to set aside the magistrate's finding that Auer voluntarily consented to an inspection of the marijuana grow. (See *United States v. Jones* (10th Cir. 2012) 701 F.3d 1300, 1319-1320 [officer's statements - that he was there for defendant's marijuana plants and " 'let's clear up what we have here today . . . [and] make sure that there [are no marijuana plants] here at your house' " - viewed separately or together, were found not objectively sufficient to overpower defendant's free will and render him incapable of denying consent to enter his residence].)

We also find no merit to Moore's argument that Auer's consent was obtained by the officers' exploitation of the illegal entry. "Three factors to be considered in determining whether a voluntary consent was obtained by exploitation of an illegal [entry] are: the temporal proximity of the [entry] and the consent, the presence of intervening circumstances, and particularly, the purpose and flagrancy of the official

---

[3]     As we noted in footnote 1, *ante*, there was nothing deceptive about this inspection request.

misconduct." (*United States v. Santa* (11th Cir. 2000) 236 F.3d 662, 677.) In all events, however, although "the factors do provide a useful structure" (*United States v. Delancy* (11th Cir. 2007) 502 F.3d 1297, 1310), "a finding with respect to attenuation, like consent, can only be made after . . . a 'careful sifting of the unique facts and circumstances of [the] case. . . .' " (*United States v. Wellins* (9th Cir. 1981) 654 F.2d 550, 554, fn. omitted, quoting from *Schneckloth, supra*, 412 U.S. at p. 233.) Thus, "[w]e decide whether consent was tainted by illegality with 'a pragmatic evaluation of the extent to which the illegal police conduct caused [Auer's consent] . . .,' not with a stopwatch." (*United States v. Welch* (11th Cir. 2012) 683 F.3d 1304, 1308, fn. omitted.) Contrary to Moore's contentions, there is substantial evidence supporting the magistrate's finding that Auer's consent was not obtained by the officers' exploitation of the illegal entry. The officers' purpose was not to conduct a search of Moore's residence but to question the occupants about a potential illegal marijuana grow that had been seen by a neighbor. After bypassing the gate, the officers went directly to the residence and garage areas and did not conduct a preliminary investigation of the curtilage as occurred in *United States v. Quintana* (M.D. Fla. 2009) 594 F. Supp.2d 1291, 1304-1305). Nor did the officers discover incriminating evidence later used to confront the occupants of the residence as occurred in *United States v. Hambelton* (N.D. Fla., Mar. 18, 2009, Case No. 1:08cr26-SPM) 2009 U.S. Dist. Lexis 25139, at pp. *4, 19-20, and *United States v. Rodriguez* (N.D. Fla., Mar. 18, 2009, Case No. 1:08cr32-SPM) 2009 U.S. Dist. Lexis 27615 at pp. *6, 24. Further, there was no evidence Auer was actually surprised, frightened, or confused by the officers' presence. Auer did not ask the officers to leave, but freely answered their questions and apparently believed he was not revealing incriminating evidence by his responses or his consent to inspect the marijuana grow. During the inspection the officers searched only those rooms in the residence that contained the marijuana grow operation; they did not search any other areas of the residence. On this record, we see no reason to set aside the magistrate's finding that

8

Auer's consent to inspect the marijuana grow was not obtained by the officers' exploitation of the illegal entry. (See *United States v. Victores* (S.D. Fla., Aug. 5, 2011, Case No. 10-20716-CR-Lenard/Turnoff) 2011 U.S. Dist. Lexis 86742 at pp. *15-16 [despite illegal entry onto the curtilage of property, the agents' entry was for the legal purpose of a knock and talk, and not to exploit any evidence they might find in order to coerce the consent of the defendants; "[t]he circumstances surrounding the agents' entry . . . , namely their calm interactions with [one occupant] and the absence of drawn weapons or restraints upon anybody inside the home" supported a finding that the agents' illegal actions lacked flagrancy].)

We decline Moore's request that we consider other factors and draw other inferences from the evidence. Our authority as an appellate court " ' "begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted," to support the [magistrate's] findings.'. . . 'Reversal is not warranted merely because the circumstances might also be reasonably reconciled with a contrary finding.' " *(People v. Snead* (1991) 1 Cal.App.4th 380, 384.)

In sum, we conclude Moore has failed to demonstrate the evidence seized from his residence was the result of an unreasonable search in violation of the Fourth Amendment. Accordingly, we affirm both the magistrate's ruling denying Moore's motion to suppress and the trial court's ruling denying Moore's motion to dismiss the information.

**DISPOSITION**

The judgment is affirmed.

_____
Jenkins, J.

We concur:

_____
Pollak, Acting P. J.

_____
Siggins, J.