NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

JAN 17 2023

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.   22-10041 |
| Plaintiff-Appellee, | D.C. No. 4:18-cr-01307-RCC-JR-1 |
| v. | |
| RODNEY NEBRASKA LANGFORD, | MEMORANDUM* |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of Arizona
Raner C. Collins, District Judge, Presiding

Argued and Submitted December 7, 2022
Phoenix, Arizona

Before: WARDLAW and BUMATAY, Circuit Judges, and ZOUHARY,** District Judge.

Rodney Nebraska Langford (Langford) appeals his conviction for

conspiracy to possess with intent to distribute marijuana, on the ground that his

pre-arrest and post-arrest statements, as well as a bill of lading seized from his car,

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

** The Honorable Jack Zouhary, United States District Judge for the Northern District of Ohio, sitting by designation.

should have been suppressed under the Fourth Amendment. The district court denied Langford's motion to suppress after determining that Langford "consented to a search and made certain statements" so "there was no *Miranda* violation, no illegal arrest, and no illegal search." After trial, Langford was convicted and sentenced to fifteen months in prison. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

1.      The district court properly denied Langford's motion to suppress the evidence obtained from the U-Haul truck because Langford, whom officers earlier saw as a passenger in the truck, did not have standing to challenge the search of the U-Haul. "[A] person must have a cognizable Fourth Amendment interest in the place searched before seeking relief for an unconstitutional search." *Byrd v. United States*, 138 S. Ct. 1518, 1530 (2018). Langford did not own the U-Haul, was not driving the U-Haul when the agents stopped it, and was not at the scene when the agents searched the U-Haul. As such, Langford's "*own* expectations of privacy or property interests" were not violated by the search of the U-Haul, and he cannot establish standing to challenge this search. *United States v. Lingenfelter*, 997 F.2d 632, 636 (9th Cir. 1993).

2.      The district court properly denied Langford's motion to suppress evidence seized from the search of his Impala, which occurred when law enforcement officers questioned Langford after he voluntarily pulled into a gas

2

station as the U-Haul was stopped. Although the district court incorrectly determined that the stop of Langford was consensual throughout its entirety, reasonable suspicion existed as the encounter evolved into an investigatory stop, and for this reason the district court properly denied the motion to suppress.

As "the Fourth Amendment is not implicated when law enforcement officers merely approach an individual in public and ask him if he was willing to answer questions," *United States v. Washington*, 490 F.3d 765, 770 (9th Cir. 2007), Langford's initial encounter with law enforcement at the gas station constituted a consensual encounter. However, that encounter became an investigatory stop requiring reasonable suspicion after multiple agents surrounded Langford and told him repeatedly that he could not leave the gas station until they completed the search of the U-Haul. Under the "totality of the circumstances," Langford likely "would not have felt free to disregard [law enforcement's] directions . . . and leave the scene." *Id.* at 773–74.

"We may affirm a district court's denial of a motion to suppress on any basis supported in the record." *United States v. Ruiz*, 428 F.3d 877, 880 (9th Cir. 2005). Here, the officers had "reasonable suspicion supported by articulable facts that criminal activity [was] afoot." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (citation omitted). They had information that the wire spools transported in the U-Haul were part of a drug trafficking scheme. Taylor and Langford picked up those

3

wire spools and engaged in "lead car-load car" driving, "whereby two cars travel together during a smuggling venture with the first car operating primarily as a scout car." *United States v. Larios-Montes*, 500 F.2d 941, 943 (9th Cir. 1974). Agents additionally testified that the vehicles were driving in a "big loop," which indicated that Langford and Taylor were "do[ing] countersurveillance to see if they were being followed." Once Langford was stopped, he provided "false information" that he was not driving with anybody else, and appeared "nervous," which is a "pertinent factor in determining reasonable suspicion." *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000). Thus, over the course of the stop, reasonable suspicion existed.

3. The district court's ruling that Langford consented to the search of the Impala is not clearly erroneous, and the bill of lading seized from the Impala was properly admitted into evidence. "Whereas the burden is on the prosecution to demonstrate at trial that the defendant voluntarily consented to the search, on appeal we review the factual record in the light most favorable to the verdict." *United States v. Kim*, 25 F.3d 1426, 1431–32 (9th Cir. 1994). Courts weigh five factors to determine the voluntariness of a vehicle search: "(1) whether defendant was in custody; (2) whether the arresting officers had their guns drawn; (3) whether Miranda warnings were given; (4) whether the defendant was notified that [he] had a right not to consent; and (5) whether the defendant had been told a

4

search warrant could be obtained." *Washington*, 490 F.3d at 775 (citation omitted).

Under the *Washington* factors, when viewed in the light most favorable to the verdict, the district court's determination that Langford consented to the search of his vehicle was not clearly erroneous. An agent testified that he asked Langford for consent to search his vehicle, which indicates that Langford understood he could refuse consent. The agents never threatened Langford, nor did they notify him that his failure to give consent would be futile because a search warrant could be obtained. And once Langford gave initial consent to search his Impala, "such general consent can include consent to search a car's trunk." *United States v. McWeeney*, 454 F.3d 1030, 1034 (9th Cir. 2006).

4.     Finally, the district court did not err in admitting Langford's pre-arrest statements without *Miranda* warnings, or his post-arrest statements after *Miranda* warnings had been issued. "An officer's obligation to give a suspect *Miranda* warnings before interrogation extends only to those instances where the individual is 'in custody.'" *United States v. Kim*, 292 F.3d 969, 973 (9th Cir. 2002) (quoting *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977) (per curiam)). The inquiry focuses on "whether there [was] a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *Stansbury v. California*, 511 U.S. 318, 322 (1994) (citation omitted). Prior to Langford's arrest, the record

5

does not demonstrate that the agents restrained Langford's movement to the degree associated with a formal arrest during the gas station encounter. The agents did not handcuff Langford at the gas station, and he smoked a cigarette while they searched the Impala. The district court therefore properly determined that Langford was not in custody at the gas station for *Miranda* purposes.

While Langford may have made unwarned admissions at the gas station, "absent deliberately coercive or improper tactics in obtaining the initial statement, the mere fact that a suspect has made an unwarned admission does not warrant a presumption of compulsion" in the second statement. *Oregon v. Elstad*, 470 U.S. 298, 314 (1985). Here, there is no evidence that law enforcement obtained Langford's pre-arrest statements using improper or coercive tactics, nor that agents subjected him to an intentional two-step interrogation strategy after his arrest. Rather, Langford voluntarily gave statements to the agents as they searched his car, and then gave statements post-arrest after receiving *Miranda* warnings. The district court properly admitted his pre-arrest and post-arrest statements.

**AFFIRMED.**